STANTON-WHITE DREDGING CO. v. BRADEN.

Opinion delivered January 27, 1919.

1. DRAINS — NEGLIGENCE OF CONTRACTOR — LIABILITY TO PERSON IN-JURED.—Though contractors dig a ditch under plan and in accordance with contract, if they injure the property of another through the negligent exercise of their right, they are responsible therefor, and must respond in damages.

2. DRAINS—DAMAGE TO ADJACENT LANDOWNER.—Where a contractor, in building a temporary dam, could have prevented injury to adjacent landowners by placing spillways or using other methods to take care of overflow waters during construction, due care in accordance with his right to build the improvement in accordance with the contract and plans required that he provide such means of caring for the overflow.

3. DRAINS—DAMAGES FROM CONSTRUCTION—INSTRUCTION.—In an action against a ditch contractor for damage to adjacent lands by overflow, an instruction that if the overflow was caused by sudden and unprecented rainfall, not the result of the contractor's negligence, the verdict should be for the defendant, was properly refused where there was no evidence that the damage was due to an unprecedented rainfall.

Appeal from Hempstead Circuit 'Court; *Geo. R. Haynie,* Judge; affirmed.

*Etter & Monroe,* for appellant.

1. The evidence shows no negligence in the construction of the dam. It was constructed according to the plans and directions of the engineer and skillfully done.

2. The court erred in giving and refusing instructions to the jury and the verdict is against the evidence. 110 Ark. 416; 118 *Id.* 1; 170 S. W. 1012; 91 Ark. 41; 120 S. W. 391; 170 *Id.* 1012.

*Steve Carrigan, Jr.,* for appellee.

There is no error in the instructions. There was no evidence of unprecedented rainfall, and No. 4 was properly refused. 110 Ark. 416. The contractors were liable. 36 N. W. 267; 14 *Cyc.* 1057; 170 S. W. 1012; 118 Ark. 1; 131 *Id.* 286.

HUMPHREYS, J.   Appellee instituted suit against appellant in the Hempstead Circuit Court to recover damages on account of the alleged negligent damming up of Ozan Creek by appellant so as to overflow and destroy crops on the southwest quarter of the southwest quarter of section 20, township 10 south, range 25 west in said county, which appellee had leased from the owner, G. S. Smith.   It was alleged that appellant negligently dammed up said creek while digging a drainage ditch and building a dam, under contract with Ozan Drainage District No. 1, of Hempstead County, Arkansas.

Appellant filed answer denying the material allegations in the complaint.

The cause was submitted to a jury upon the pleadings, evidence and instructions of the court.   The jury returned a verdict against appellant for $200, upon which a judgment was rendered.   Under proper proceedings, an appeal has been prosecuted to this court.

Appellant, a Mississippi corporation, took over by assignment a contract of E. J. Hahn, of Little Rock, Arkansas, with the commissioners of Ozan Drainage District No. 1 of Hempstead County, Arkansas, to construct a drainage ditch and continuous dam on the south side thereof.   The ditch and continuous dam on the south side thereof were for the purpose of catching and carrying away all waters that drain into the ditch from the lands north of it, so that the natural drains on the south side, of the ditch and dam would not be burdened with the accumulation of waters from the lands on the north side of the ditch.   This would have the effect of draining a large area of land on each side of the ditch which was included in the improvement district.   The general course of the ditch was from west to east and crossed Ozan Creek some five or six times.   It was dug with a dredge boat, which floated on the water carried in the ditch and obtained by damming Ozan Creek wherever the ditch crossed it.   The ditch began about two miles west of appellee's land and crossed Ozan Creek at right angles the last time before reaching the land about one-half mile

west of it.   In order to prevent the water in the ditch, which was floating the dredge boat, from escaping when the ditch reached said creek, a dam was placed across the creek, which constituted a part of the continuous dam or levy on the south side of the creek.   The ditch had been dug to a point some twenty or thirty yards into the land in question at the time the waters overflowed its banks. Where the ditch first crossed Ozan Creek some two miles to the west of the land, a temporary spill-way had been put in the dam erected across it for the purpose of allowing surplus waters caused by rains to escape down the natural channel.   On account of a shortage of dirt, an opening was left in the dam west of the creek where the ditch last crossed it before entering appellee's land, which served as a spill-way for a part of the surplus water to run out and into the channel seventy-five feet below the dam erected across the creek.   No temporary spill-way to care for surplus waters was built in the dam placed across Ozan Creek where the ditch last crossed it before entering the land.   The ditch was built in June, during the rainy season.   When the rains came, more water ran into the ditch than could be accommodated by the temporary spill-way aforesaid, and it forced its way down the ditch and, at the end thereof, overflowed the banks and flooded the crop of appellee.   The crop was submerged from two to three weeks on this account and damaged, according to witnesses, ranging in amount from $100 to $600.   No point is made that the damages assessed were excessive, so we deem it unnecessary to set out the evidence of the several witnesses on that point. The evidence detailed by the several witnesses responsive to the real issue in the case is, in substance, as follows:

Appellee testified that appellant dammed up the creek and turned all the water into the incomplete ditch, which had entered his land eighteen or twenty yards; that it made no provision to care for the waters of the creek after they entered the ditch; that the dam across the creek came to the top of the ditch and there was no spill-way for the waters to get out when the ditch was

full; that the rains were not unusual; that, if the dam had not been built across the creek, the water would have gone on in its natural course; that the dam was built up to the top of the bank of the ditch and, if a spill-way had been left, the ditch could have been filled, so as to float the dredge boat, and the rest of the water would have gone down the creek; that it was necessary for appellant to have water to float the dredge boat in constructing the ditch; that, after his land was overflowed, he tried to get the contractor to cut the dam and allow the waters to recede, which he refused to do, and placed a guard there to prevent anyone else from cutting it.

R. A. Carrigan testified that they dammed the old creek when they crossed it with a dam seven or eight feet high above the ground and that no spill-way was left in it; that appellant had to have water in the ditch to proceed with the construction thereof with the dredge boat, and, in order to get the water, it was necessary to dam up the creek; that, in order to do this, it was not necessary to have built the dam to the top of the ditch, but a spill-way could have been left to care for the surplus water, as had been done at his farm.

Gray Carrigan testified that it was necessary to dam up the creek in order to get water to operate the dredge boat, but that he did not know whether the water would have run out of the ditch into the creek if the dam had not been placed there.

R. W. Williams testified that if appellant had not dammed up the creek, it could not have proceeded with the construction of the ditch for want of water.

G. S. Smith, the owner of the land, testified that appellant put a dam across Ozan Creek and caused the water to flow into the ditch and overflow the lands; that he signed the petition for the construction of the improvement; that he knew at the time there was to be a continuous levy on the south side of ditch that would close up all openings, including the old bed of the creek.

F. C. Stanton, a member of the contracting company, testified that he was working under plans and specifica-

tions provided by Mr. Gibson, engineer of the district, and did the work under the supervision of the engineer and commissioners; that he constructed the work by means of a dredge boat which floated on water carried by the ditch, which was supplied by damming Ozan Creek; that he dammed it up for his own convenience and in order to carry out appellant's contract with the commissioners; that, if the creek had not been dammed, he thought wherever the ditch intersected with it the water would have gone down the old creek out of the ditch and left the dredge boat on the bottom, which would have prevented further work; that a spill-way was placed in the dam where it first crossed the creek about two miles west of the land in question, and also one thirty-five or forty feet wide was placed above the last dam so that the water could run into the old creek about seventy-five yards below the dam; that no spill-way was placed in the last dam; that, after the rains came and the land in question was overflowed, he was asked to remove the dam; that, had he then done so, the greater part of the water would have gone down the new ditch, because it was straight and clean and would not have run down the natural channel, and, had he done so, it would have washed out the entire dam and left the dredge boat sitting on the bottom of the ditch; that the ditch was finished and accepted; that the levees or dams were a part of the improvement and were to be constructed as appellant proceeded with the work.

D. M Citty and Bob Arnold, two of the commissioners, testified that the improvement was built in accordance with the plans and specifications provided by their engineer and that the work proceeded under the direction of the commissioners and engineer, and was built in accordance with the plans and specifications and accepted by the engineer and commissioners for the district.

Giles H. Gibson, in addition, testified that he did not know of any negligence used by the appellant in constructing the dam across the creek; and that the dam was a part of the construction of the improvement; that,

after the completion of the work, the ditch would have been big enough to carry the water from ordinary floods.

This cause was sent to the jury, over the objection of appellant, under instructions which embodied the idea that it was the duty of contractors, in building a drainage district, to use ordinary care to provide for surplus waters occasioned by ordinary rains and the diverting of waters from their natural drainage, during the time the improvement was being constructed. Appellant's insistence was that, if the contractors constructed the improvement in accordance with plans and specifications and under the supervision of the commissioners of the district they could not be held, during the construction, for damages to adjacent land owners, occasioned by flood waters resulting from the construction of the improvement itself; that the only responsibility imposed upon the contractors would be for faulty construction and not for faulty design in the plans and specifications. This court is committed to the doctrine that, although contractors construct an improvement under plan and in accordance with contract, if they injure the property of another through the negligent exercise of that right, they are responsible therefor and must respond in damages. *Wood v. Drainage District No.* 2, 110 Ark. 416, and other cases cited in support of the doctrine. In keeping with this doctrine, it was said in the recent case of *Mitchell v. Hahn,* 131 Ark. 286, quoting from syllabus 2:

"A contractor can not escape liability resulting from the negligent construction of a dam, on the overflow of lands, although he acted under the direction of the engineer, appointed by the commissioners, of a drainage district for which he was working; but the contractor is not liable, where he followed the terms of the contract with the district, and operating in accordance therewith, built the dam complained of, with that degree of skill which is ordinarily possessed and exercised by contractors doing the same or similar work, and was not negligent in the building or maintenance thereof."

In the application of the law just quoted to the facts in this case, it was not error in the court to send the case to the jury on the issue of whether the damage was occasioned by the negligent construction of the improvement, even though the evidence did show that the work was done in accordance with plans and specifications and under the supervision and direction of the commissioners and engineer, for the reason that the evidence tended to show on the part of appellee that the failure to construct the temporary spill-ways to provide for surplus water on the part of the contractor occasioned the damage; and, on the part of appellant, tended to show that, had the spill-ways been constructed, the damage could not have been prevented. In other words, if placing temporary spill-ways in the dam or using other methods for caring for overflow waters during construction would have prevented the damage, careful and skillful construction, in the exercise of the contractor's right to build the improvement in accordance with the contract and plans, would require of him that he provide such temporary methods of caring for overflow waters in order to prevent damage to adjacent land owners.

It is unnecessary, under this view of the law, as applied to the facts in this case, to extend this opinion with a discussion of each objection by appellant to the instructions given and each exception saved by appellant to the instructions requested by it and refused by the court. The general discussion in effect disposes of all points raised favorable to appellee. There is one assignment of error, however, not covered by the general discussion. That is the error assigned in the refusal of the court to give instruction No. 4, requested by appellant, which is as follows:

"You are further instructed that if you find from the testimony that the overflow by which the plaintiff is alleged to have been damaged was caused by a sudden and unprecedented rainfall and was not the result of any negligence on the part of the defendant your verdict will be for the defendant."

It was not error to refuse this instruction for the reason that we have been unable to find in the evidence a statement coming from any witness that the damage was due to an unprecedented rainfall. It is true the evidence showed that the construction was built during the rainy season in the month of June, but the evidence revealed that the rains were the ordinary rains for that season.

The judgment is affirmed.