SOUTER *v.* CARRUTHERS.

5-3124                                           374 S. W. 2d 474

Opinion delivered January 27, 1964.

*Smith, Williams, Friday & Bowen* and *B. S. Clark,* for appellant.

*Felver A. Rowell, Jr.,* for appellee.

JIM JOHNSON, Associate Justice. This is an appeal from a judgment for damages sustained as a result of floodwater inundating land. The judgment is against appellants Hubert H. Souter and The First National Bank in Little Rock, co-executors of the estate of H. Avery Souter, deceased, who during his lifetime was engaged in the contracting business. Appellees are owners of certain farm lands near Morrilton which are part of the Point Remove Levee and Drainage District of Conway County.

A levee was constructed several years ago pursuant to an agreement with the U. S. Corps of Engineers along Point Remove Creek and near the Arkansas River. A drainage ditch was also constructed by the Engineers and thus the flood protection and drainage sought by the District was accomplished.

A levee box consisting of two 66-inch drainage pipes or culverts and a flood control gate was built into the levee. The culverts are located at the base of the levee

and are utilized to control drainage from the lands involved. In 1961 it was determined that the culverts were defective and should be repaired. The Engineers agreed to perform the work and the necessary plans and specifications were prepared by that agency. Thereafter the Engineers awarded a contract to H. Avery Souter which was executed on October 25, 1960. Souter moved his equipment onto the job site and started the work immediately. The work was under the direct supervision and control of the Engineers.

The plans specified that the levee should be cut initially down to the culverts. The elevation of the levee is 310 feet above sea level and the culverts are at 282 feet. This excavation was completed and Souter then constructed two coffer dams, one on the river side of the levee, and the other on the land side. Due to continued rainfall Souter requested and received permission from the Engineers to discontinue the work. Before being allowed to do so he was directed by the Engineers to construct a temporary dam between the flood gate and the levee.

The cessation of work was in the spring of 1961 and thereafter two floods occurred, both of which involved Point Remove Creek and the Arkansas River. The first occurred in April and caused no damage other than to the temporary dam and this was soon repaired. The second flood in May washed over the dam, flooded appellees' land, and damaged certain growing crops. The water also caused a delay in planting soybean and cotton crops resulting in a below average yield.

Appellees filed their complaint alleging that Souter was negligent in leaving the levee in the above condition with no protection against overflow and in failing to refill the levee after receiving repeated warnings to do so.

Shortly after the complaint was filed, Souter died and the action was revived in the name of the co-executors of his estate.

This cause was tried before a jury and a verdict was returned for appellee Dr. H. C. Carruthers in the sum of $5,000.00, and for appellee Roy Carruthers in the sum of $3,000.00. Judgment was entered in accordance therewith, from which appellants prosecute this appeal.

For reversal, appellants, rely principally upon two points, which are: (1) that the contractor at all times followed the plans and specifications contained in the contract, received his instructions from the Engineers, and was under their direct supervision; and (2) Souter did not commit any independent acts of negligence.

This court has very recently decided cases involving this same problem. In *Southeast Construction Co., Inc.* v. *Ellis*, 233 Ark. 72, 342 S. W. 2d 485, we held that a contractor who performs in accordance with the terms of his contract with the governmental agency involved, and under the direct supervision of that agency, and is guilty of neither a negligent or wilful tort, is not liable for damages resulting from his performance. This proposition was reaffirmed in *Ben M. Hogan & Co.* v. *Fletcher*, 236 Ark. 951, 370 S. W. 2d 801.

Appellees seek to distinguish these cases by urging that the temporary dam was not a necessary part of the construction contract but was built solely for the convenience of the contractor. On this assumption they contend that the contractor did not build the dam of sufficient height and was negligent.

Under the circumstances here presented, we are unable to agree with appellees' position and assumption. There is no evidence that Souter failed to follow the plans and specifications contained in the contract. The contract required him to take necessary precautions to protect the entire structure at all times. The evidence is uncontradicted that the temporary dam was built not only for what flood protection it would afford during the necessary shutdown but also was essential to protect the work that had already been performed. Also, the dam was built on instructions from the Engineers and under

that agency's direct supervision. Moreover, the Engineers specified the height to which the temporary dam was built.

The facts in the instant case are similar to the facts in the *Ben M. Hogan & Co.* case, *supra,* decided subsequent to the judgment here appealed from. In that case a big ditch, usually full of water, lay between appellees' property and the highway. When Ben M. Hogan Co. started construction of the bridge or reconstruction of the road involved, the ditch was filled in. When this occurred, appellees' pasture would not drain and water began to stand there. We held that appellees were damaged when the big ditch was filled in accordance with the State Highway Department's plans and specifications, but the contractor was only doing what the Highway Department required of him. In the instant case, appellees' lands were damaged because a cut in the levee was made, but here again, the contractor was only doing what the Engineers required of him.

Several witnesses testified on behalf of appellees that they had on numerous occasions in past years seen the water of Point Remove Creek and the Arkansas River rise substantially higher than the coffer dams and temporary dam. Since the structures were built to the maximum height possible under the conditions existing, it is apparent that flooding could not have absolutely been avoided by dams constructed to any elevation short of the original height of the levee.

From all the evidence adduced, we are impelled to the conclusion that the real cause of the damage sustained by the land owners was the cut in the levee which was necessary to repair the defective culverts. This cut was made pursuant to the conditions and requirements of the contract, and the other work on the job was performed under the direct supervision and control of the U. S. Corps of Engineers. In the absence of proof of negligence on the part of the contractor in such performance, the judgment must be reversed and the cause dismissed.