ROBERT T. WALKER *v.* WITTENBERG, DELONY & DAVIDSON, INC. ET AL

5-4008                                    412 S.W. 2d 62

Opinion delivered December 5, 1966
[Supplemental opinion on rehearing delivered March 3, 1967, 242 Ark. 97.]

*Howell, Price & Worsham,* for appellant.

*Cockrill, Laser, McGehee & Sharp; Rose, Meek, House, Barron, Nash & Williamson; House, Holmes & Jewell,* and *Robert M. McHenry,* for appellees.

CARLETON HARRIS, Chief Justice. Sometime prior to December, 1961, Ruebel and Company, Little Rock fu-

neral directors, decided to construct a funeral home on West Markham Street. Wittenberg, Delony and Davidson, Inc., Little Rock architects, were employed to design the building, and in furtherance of the employment, these architects prepared plans and specifications. In doing so, they designed the outer walls to be built from pre-cast concrete slabs. The architects then sent their proposed design to Harter Marblecrete Stone Company, Inc., the proposed manufacturer, for suggestions. Harter made some suggestions for change in the design of the slabs, and thereafter manufactured them in accordance with these changes. The architects let the contract for construction to Cone and Stowers, and agreed with Ruebel, for an additional fee, to supervise and inspect the construction. The exterior walls of the building were to be these pre-cast slabs, 10 feet high, 8 feet wide, and 3 inches thick.

Robert Walker, appellant herein, was a brick mason, who had been engaged in the task of laying light aggregate blocks behind the pre-cast concrete slabs. After these blocks had been laid on the east wall of the building, nearly to the top, the bracing, which had been holding the slabs upright, was, at the direction of the assistant superintendent for Cone and Stower, removed in order for the top two courses of blocks to be laid. Walker was standing on top of the wall, and when the last brace had been removed, the wall fell outward, and appellant suffered the injuries for which he subsequently brought suit. Complaint was instituted against the architects,[1] it being alleged that said architects were negligent in failing, under their contract, to prepare proper plans, and in failing to supervise construction after award of the contract. Subsequently, the complaint was amended to make Ruebel and Company a defendant, it being alleged that this company was negligent in failing to have a licensed architect to supervise the work as provided by Little Rock Ordinance No. 204,[2] and still

[1]Wittenberg, Delony and Davidson is incorporated, but we shall refer to this appellee in the plural.

[2]On trial, the undisputed proof reflected that Ruebel employed

later, Harter Marblecrete Stone Company, Inc., was made a defendant, it being alleged that the pre-cast stone panels were of faulty design; that Harter negligently failed to warn of the inadequacy of the design and the danger created thereby, and also negligently failed to submit specifications for the use and erection of said panels to prevent them from falling during construction. After the filing of answers, amendments and interrogatories, the case proceeded to trial, and at the conclusion of appellant's evidence, the court instructed the jury to return a verdict for both appellees. From the judgment so entered, appellant brings this appeal.

We think the court erred in directing a verdict for the architects. In the first place, an architect's liability for negligence which results in personal injuries or death may be based upon his supervisory activities. 5 Am. Jur. 2d 688, Paragraph 25. It is undisputed that Wittenberg, Delony and Davidson, in addition to preparing the plans and specifications, were also employed to supervise the construction, and for this they received a special fee. The employment of the architects was done under Little Rock City Ordinance No. 204, which requires that an owner engaged in the erection of a building where the estimated value exceeds $25,000.00, shall employ a registered architect, or a licensed engineer, to supervise the construction of the building. The A.I.A.[3] General Conditions were explicitly made a part of the specifications in the contract (with the construction company), stating, "A.I.A. Document No. A-201, 1952 Edition of the American Institute of Architects, are hereby made a part of this specification to the same extent as if bound herein." Article 38 of the A.I.A. General Conditions of the contract provides, *inter alia*:

"The Architect shall have general supervision and direction of the work. He is the agent of the Owner only to the extent provided in the Contract Documents and

Wittenberg, Delony and Davidson in a supervisory capacity, and the complaint as to Ruebel was dismissed without objection.

[3] A.I.A. is an abbreviation for American Institute of Architects.

when in special instances he is authorized by the Owner so to act, and in such instances he shall, upon request, show the Contractor written authority. He has authority to stop the work whenever such stoppage may be necessary to insure the proper execution of the Contract."

It is the contention of appellant that, since the architects agreed with the owner to supervise, and inspect, and were paid a fee for it, they had a definite duty to supervise the work, including the responsibility of taking steps to secure the safety of the workmen. Witnesses for this appellee admitted that the owner had no one else to inspect the work and see that it complied with ordinances, regulations, etc., and it was further admitted that no one from the architectural firm performed any supervisory activities. Mr. Tom Gray, an employee of Wittenberg, Delony and Davidson, testifying for these appellees, agreed that a free-standing wall, *i. e.*, a wall that does not have any lateral support, is not stable, and when braces are removed, such a wall will not stand.

The architects defended primarily on the contention, and they argue here, that their duty was to supervise and inspect *only to the end* that when completed the building would conform to plans and specifications, and they were also to determine that the construction was in compliance with the Little Rock Building Code. They assert that there was no duty upon them to direct or control the contractor in reference to the temporary support of the panels during construction. It is further contended that they were only required to make *periodic* visits to the job site (as a matter of determining that, when completed, the building would conform to the plans and specifications); that they were not responsible for the "on the spot" directions given by the assistant supervisor for the contractor, Henry Bowden, who directed that the braces be removed from the east wall; they were not present when the order to remove the bracing was given, had no knowledge thereof, and accordingly, cannot be held legally responsible.

It is true, of course, that if there was no obligation upon the architects to be present during construction, this argument would be valid. The contention that the sole duty of the architects was to supervise to the end that the building would conform to plans and specifications when completed, was likewise the principal defense in *Erhart* v. *Hummonds*, 232 Ark. 133, 334 S. W. 2d 869, but we upheld a judgment against the appellant architects in that case. These appellees say there is a distinction between the present case and *Erhart*, for there, in setting out the duty of the contractor to shore and protect walls of excavations, there was additional language, ''or as directed by the architects,'' and here, there is no specific reference to the architect in Article 12 of the General Conditions.[4] We do not agree that these particular words preclude any possible liability on the part of architect appellees, for under A.I.A., as heretofore stated, the jury could have found that there was a responsibility on Wittenberg, Delony and Davidson to supervise in a manner consistent with appellant's contention. Appellant, and architect appellees, apparently are far apart in their interpretation of the meaning of the word, ''supervise,'' and it is interesting to note that Webster's Third New International Dictionary shows the word, ''supervise,'' (among other definitions, as meaning) ''To look over, inspect, oversee, * * * to coordinate, direct, and inspect continuously and at first hand the accomplishment of.''

The architects insist that they were not derelict in any duty that they owed to the owner, but we stated in *Erhart*:

''* * * The issue here, we think, is not whether the architect breached any duty to the owner, but whether there was a breach of duty owed to the workmen by the architect arising out of the safety provisions of the contract.''

---

[4] Article 12 sets out the requirements which are imposed upon the contractor to take necessary precautions for the safety of employees during the construction.

Appellee cites cases (nearly all from other states) in support of the position taken, but, as stated, we think *Erhart* is applicable.

We hold there is a fact question here as to the duties imposed upon the architects under the term, "supervision." Does this term prescribe only such supervision as contended by appellee? Is there significance in the omission of the phrase appearing in the contract in *Erhart,* "or as directed by the architects," or, on the other hand, was there a duty, as contended by appellants, upon the architects, under the term, "supervision," to take positive steps to insure the safety of workmen during the construction? To some extent, the agreement is ambiguous, and where a contract is ambiguous, a question of fact is created to be passed upon by the jury. *El Dorado Real Estate* v. *Garrett,* 240 Ark. 483, 400 S. W. 2d 497. We think sufficient evidence was offered to submit the question to the jury.

We agree with the trial court that appellant's proof was insufficient to make a jury question as to the liability of appellee Harter Marblecrete Stone Company, Inc. There is no proof that the slabs were defectively designed or manufactured, and, in fact, this question (which was an allegation in the complaint) is not argued in the brief; as a matter of law, we agree with the trial court that these slabs were not inherently dangerous, nor was it reasonably foreseeable that a use would be made of the slabs which would cause injury to some individual. Similar contentions are discussed in our case of *Lilly* v. *Riggs Company,* 238 Ark. 1027, 386 S. W. 2d 488. There, Roy Lilly was killed while endeavoring to repair a broken cable on a Caterpillar machine. His widow instituted suit against the tractor company, alleging that proper warnings were not given as to the safe manner for unsnarling a broken cable, and that the failure to give proper instructions and warnings constituted negligence on the part of the company, its agents, and employees. On trial, the court directed a verdict for the company, and Mrs. Lilly appealed. After dis-

cussing the function and manner of operation of the Caterpillar, this court, in affirming the action of the trial court, said:

"Appellant asserts that the Caterpillar was inherently dangerous, but we do not agree. Black's Law Dictionary, Fourth Edition, Page 921, defines 'inherently dangerous' as 'danger inhering in instrumentality or condition itself at all times, so as to require special precautions to prevent injury, not danger arising from mere casual or collateral negligence of others with respect thereto under particular circumstances.' Of course, no citation of authority is necessary to support the statement that the mere fact that one is injured by a machine, or instrument, does not mean that the machine or instrument is inherently dangerous. It has been said that a product is inherently dangerous where the danger of injury stems from the nature of the product itself. An automobile, driven at a high rate of speed—or without proper brakes—or, if at night, without headlights—or if operated by one who is intoxicated—can certainly become a highly dangerous instrument, capable of causing death and crippling injuries. Yet, there is a general agreement among the jurisdictions that motor vehicles are not inherently dangerous (Annot. 74 A.L.R. 2d 1111). Numerous articles or substances, which have been held not to be inherently dangerous within the meaning of the rule, include an electric body-vibrating machine, an electric stove, a chain, a haybaler, a flat iron, a gas stove, a porch swing, a sofa, a refrigerator, and others too numerous to mention. See *Defore* v. *Bourjois, Inc.*, 105 So. 2d 846. Still, all of the articles or instruments mentioned can, by particular use, cause death or severe injury. In fact, as this court stated in *Reynolds* v. *Manley*, 223 Ark. 314, 265 S. W. 2d 714, 'It is possible to use most anything in a way that will make it dangerous.' Of course, certain substances or articles are inherently dangerous, such as dynamite, nitroglycerin or other explosives, poisons, and many others. In the case before us, we are definitely of the opinion that the Caterpillar itself was not inherently dangerous; it was *the manner*

*of repairing* that created the danger, *i. e.*, it was the fact that the cable was deliberately cut, causing the spring to pull the ejector sharply back, that caused Lilly's death, rather than the fact that the Caterpillar was equipped with a cable and spring."

We think the reasoning in that case is applicable to this phase of the present litigation. It was not a manufacturing defect that caused the east wall to fall—rather the collapse of the wall was occasioned by the fact that the bracing, which had been holding the manufactured slabs upright, was removed. The designed wall met all requirements of the building codes of the city of Little Rock. Nor do we think that Harter could have forseen that the bracing would be removed from the slabs while the wall was still being worked on. After all, Harter sold these concrete panels to a licensed and experienced contractor, and there was no reason to assume that the panels would not be handled with ordinary care and in accordance with good construction procedures. As Harter states in its brief: "This panel is no more an inherently dangerous object than a ladder which will fall if not placed against a steady object." As stated, there is no evidence that the panels contained any latent defects, nor any proof that they were in any manner dangerous when used in a manner consistent with the use for which they were made. We find no showing of negligence on the part of this appellee.

In accordance with what has been said, we affirm the holding of the Pulaski County Circuit Court (Second Division) in dismissing appellant's complaint against Harter Marblecrete Stone Company, Inc., but that portion of the judgment dismissing the complaint against Wittenberg, Delony and Davidson, Inc., is reversed and set aside, and the cause of action against this defendant is remanded back to the trial court, with directions to proceed in a manner not inconsistent with this opinion.

AMSLER, J., disqualified.