Charles M. BAKER, Plaintiff-Appellant,

v.

PIDGEON THOMAS COMPANY and Allen & Hoshall, Engineers, Defendants-Appellees.

No. 19518.

United States Court of Appeals, Sixth Circuit.

Feb. 16, 1970.

Tom Mitchell, Jr., Memphis, Tenn, R. Lee Winchester, Jr., James A. Lawrence, F. W. Jeffcoat, Memphis, Tenn., on the brief; Goff, Winchester & Walsh, Memphis, Tenn., of counsel, for appellant.

James W. McDonnell, Jr., Memphis, Tenn., James C. Hale, West Memphis, Ark., Memphis, Tenn. on the brief; Hale & Fogleman and Canada, Russell & Turner, Memphis, Tenn., of counsel, for Pidgeon Thomas Co.

Thomas R. Prewitt, Memphis, Tenn., Ralph W. Farmer, Memphis, Tenn., on brief; Nelson, Norvell, Wilson, McRae, Ivy & Farmer and Armstrong, Allen, Braden, Goodman, McBride & Prewitt, Memphis, Tenn., of counsel, for Allen & Hoshall.

Before EDWARDS, McCREE, and BROOKS,* Circuit Judges.

McCREE, Circuit Judge.

Charles Baker was operating a backhoe (a tractor-type vehicle with a rear-mounted scoop used for excavating and shoveling) on a construction project in West Memphis, Arkansas, when a steel joist forty feet in length fell from a twenty-four foot high steel column and struck his back. His spine was shattered, and he is now a paraplegic. He collected $33,330.70 from his employer's workman's compensation insurer, and then filed suit in the United States District Court in Memphis against some of the other contractors who were on the project. We consider his appeal from a directed verdict granted to defendant engineers, Allen & Hoshall, and from a jury verdict in favor of the steel erector, Pidgeon Thomas Company.[1]

---

* The Honorable Henry L. Brooks, then Chief Judge of the United States District Court for the Western District of Kentucky, sat on this case by designation.

1. The status of plaintiff's suits against other parties is not pertinent here. The workmen's compensation insurer, who was subrogated to the extent of payments

## I. The Directed Verdict for Allen & Hoshall

■ The District Court, by granting a directed verdict in favor of defendant Allen & Hoshall, held that under Arkansas law their contract with the owner created no duty to make safety inspections of the partially completed structure. On appeal, both Baker and Allen & Hoshall rely on Walker v. Wittenberg, Delony & Davidson, Inc., 241 Ark. 525, 412 S.W.2d 621 (1967), and Erhart v. Hummonds, 232 Ark. 133, 334 S.W.2d 869 (1960). Although these cases reach opposite results, they both hold that the agreement between owner and contractor determines whether duties to other persons have been assumed by the contractor. Walker v. Wittenberg, Delony & Davidson, Inc., 241 Ark. at 97, 412 S.W. 2d 621; Erhart v. Hummonds, 232 Ark. at 137, 334 S.W.2d 869.

As in most substantial construction projects, the relationships and responsibilities of the owner, the general contractor, and the subcontractors were governed by a set of detailed agreements. Allen & Hoshall contracted with the owner, Boise Cascade, to design a building and "to act in a general supervisory capacity throughout the construction period." This contract provided for periodic inspections on the job site by Allen & Hoshall, but it did not require the firm to maintain a constant day-to-day superintendence over the general contractor and the subcontractors.

It is clear from this contract that Allen & Hoshall's primary obligation was to design the building and to supervise its construction to insure that design and material specifications would be followed. There was no requirement that Allen & Hoshall make safety inspections.

Nor were they given authority to stop work for safety reasons as they could when they detected deviations from specifications.

Appellant argues that Allen & Hoshall's supervisory duties required it to determine whether the steel erector, Pidgeon Thomas, was complying with the AISC Code [2] as required by its contract with Boise Cascade. He contends that the joist would not have fallen from the steel column if Pidgeon Thomas had followed the Code, and had bolted or welded it instead of permitting it to be held in place on the column solely by its own weight. However, there is nothing in Allen & Hoshall's contract with the owner that imposed a duty to ascertain whether all the subcontractors were conforming to their contracts with the owner, except to the extent those contracts required conformity with design specifications. Accordingly, we hold that the District Court did not err in granting a directed verdict for Allen & Hoshall.

## II. The Jury Verdict for Pidgeon Thomas

Appellant contends that the jury's finding that Pidgeon Thomas was not guilty of any negligence which was a proximate cause of the injury cannot stand, because the instruction on the issue of negligence was an erroneous statement of Arkansas law.

Appellant requested an instruction which would have made it clear to the jury that adherence to industry custom and practice would not necessarily negative the existence of any negligence. The District Court refused this request and instead gave a charge based on Arkansas Model Instruction (AMI) 1204,[3]

to Baker, joined the action below as a plaintiff, but did not join in this appeal.

2. The American Institute of Steel Construction Code of Standard Practice for Steel Buildings and Bridges.

3. The Arkansas Supreme Court has written that "the AMI instruction shall be used unless the trial judge finds that it does not accurately state the law. In

that event he will state his reasons for refusing the AMI instruction." Adkins v. Kelley, 244 Ark. 199, 206, 424 S.W.2d 373 (1968), quoting from per curiam order of the Arkansas Supreme Court of April 19, 1965, reprinted in Arkansas Model Jury Instructions—Civil, at xxv (1965). See also Vangilder v. Faulk, 244 Ark. 688, 693–694, 426 S.W.2d 821 (1968).

which reads in part: "Ordinary care on the part of a contractor means that degree of skill and care ordinarily possessed and exercised by contractors doing the same or similar work."

■ Arkansas law governs in this diversity case, and it appears from the decisions of the Arkansas Supreme Court that AMI 1204 only incompletely, and therefore inaccurately, states the applicable standard of care. The five cases cited in support of AMI 1204 by its authors [4] hold that a two-part instruction is necessary: a contractor is held both to custom and industry standards *and* to the standard which would be followed by a reasonably prudent man. Souter v. Carruthers, 237 Ark. 590, 592, 374 S.W.2d 474 (1964); Hogan & Co. v. Fletcher, 236 Ark. 951, 953, 370 S.W.2d 801 (1963); Southeast Constr. Co. v. Ellis, 233 Ark. 72, 76–77, 342 S.W.2d 485 (1961); Stanton-White Dredging Co. v. Braden, 137 Ark. 127, 132–133, 208 S.W. 598 (1919); Mitchell v. Hahn, 131 Ark. 286, 289–290, 198 S.W. 528 (1917). Thus it would appear that a contractor must adhere to whichever of the two standards is the more exacting if he is not to be held negligent.[5] The District Judge apparently recognized this when he stated in colloquy with counsel concerning the jury instructions, "I intended to charge two duties."

■ Unfortunately, we believe that the instruction which he gave did not sufficiently charge both duties. It is useful to quote the instruction at some length:

When I used the word "negligence" in these instructions I mean the failure to do something which a reasonably careful person would do, or the doing of something which a reasonably careful person would not do, under circumstances similar to those shown by the evidence in this case. It is for you to decide how a reasonably careful person would act under the circumstances. To constitute negligence an act must be one from which a reasonably careful person would foresee such an appreciable risk of harm to others as to cause him to do an act, or to do it in a more careful manner.

A failure to exercise ordinary care is negligence. When I used the words "ordinary care", I mean the care a reasonably careful person would use under the circumstances similar to those shown by the evidence in this case.

\* \* \* \* \* \*

The defendant, Pidgeon Thomas Company, had the common law duty to use ordinary care for the safety of the plaintiff, and others similarly situated. The Pidgeon Thomas Company was required to use ordinary care in the performance of any duty assumed by it under the terms of the contract. *Ordinary care on the part of the contractor means that degree of skill and care ordinarily possessed and exer-*

---

4. These cases are specifically concerned with the liability of contractors for work done under contract and pursuant to government specifications, where the governmental body would enjoy immunity from tort liability if it were held responsible for the negligence. However, the standard applied does not exculpate from liability contractors whose conduct departs from the reasonable man rule.

5. This principle is in accord with the general rule. Professionals, including contractors, are generally held to the stand-

ard of care which a reasonable man, with his special knowledge, would observe, and industry custom is competent evidence of such a standard. W. Prosser, Torts, § 32, at 164–165 & 165 n. 28; Moore, Liability of Artisans and Tradesmen for Negligence, in Professional Negligence 309–21 (T. Roady & W. Andersen eds. 1960). However, since industry custom does not always meet the ordinary reasonable man standard, professional men are held, at the very least, to what an ordinary reasonable man would consider reasonable care. Moore, *supra*, at 313.

\* *cised by contractors doing the same or similar work.*

Transcript, at 1246–48 (emphasis added).

We find this instruction at best prejudicially ambiguous. Although we consider the charge as a whole, and do not focus on isolated phrases regardless of context, we cannot rule out the possibility that the jury could have ignored the earlier, "reasonable man" test on the ground that the ordinary care instruction pertaining to contractors superseded and/or defined the standard mentioned earlier in the charge. The wording of the charge does not make it clear whether the italicized portion, which paraphrases AMI 1204, is intended to characterize the reasonable man standard or to apply in addition to it. The language of the instructions in the Arkansas cases cited by the drafters of AMI 1204 much more clearly · requires contractors to observe two standards stated in the conjunctive. *E.g.,* Mitchell v. Hahn, 131 Ark. 286, 289, 198 S.W. 528 (1917): "that they built said dam with that degree of skill which is ordinarily possessed and exercised by contractors doing the same or similar work, *and* were not negligent in the building or in the maintenance thereof." (Emphasis added.)

We do not find it particularly agreeable to require a new trial because of the absence of what might be considered a few talismanic words in a jury instruction. But it seems clear that the defect in the charge may have affected the verdict. The jury might have believed that Pidgeon Thomas adhered to the standards customary in the construction in- · dustry, but nevertheless acted negligently when measured against the standard of a reasonable man.

Since there must be a new trial, we find it unnecessary to rule on the other issues raised by appellant. The judgment of the District Court is reversed, and the case is remanded for proceedings not inconsistent with this opinion.