694 F.2d 520
 D.F. PORTIS, Guardian of Daniel F. Portis, III, and Mik'l
Portis, Incompetents, Danette P. Watkins; Julanne P.
Ingram; H.E. Richardson; Ted Thomas; Eddie Thomas; J.C.
Portis; Portis Planting Company, Inc.; Stanley Jones;
James Lea; JJ & J, Inc., Sam Gossage; Donald Gossage;
M.G. Smith; Thomas B. Goldsby, Jr.; J.D. Fletcher, C.C.
Eason and Jimmy Fletcher; Glen Pratt; James Couch; C.C.
Couch; Pete Killough; Roy Key and Lola Key, husband and
wife; Charles W. Brickell and Dairl Anderson; Edgar
Stephens; J.F. Young; Lou Bertha Quinn, as Executrix of
the Estate of William Hallock Quinn, Deceased; Hoyle Wells;
Merchantile Bank of Jonesboro, Arkansas, as Executor of the
Estate of E.V. Hersperger; Fred Jeffers; A.A. Dunkerson;
Larry Henry; Pete Woodsmall; R.B. Holthouse; R.E.
Holiman; H.C. Bradford, Jr. and Bill Morgan, Appellants,
v.
FOLK CONSTRUCTION COMPANY, INC. and United States of
America, Appellees.
 No. 81-2399.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 15, 1982.
Decided Dec. 7, 1982.
 
 1
 Holt, Batchelor, Spicer & Ryan, Joe D. Spicer (argued), Memphis, Tenn., Reid, Burge & Prevallet, Blytheville, Ark., George W. Proctor, U.S. Atty. by Walter G. Riddick, Asst. U.S. Atty. (argued), Little Rock, Ark., for appellees.
 
 
 2
 Friday, Eldredge & Clark, Little Rock, Ark., Thompson, Paddock & Llewellyn, Bill Thompson (argued), Fort Smith, Ark., for appellants.
 
 
 3
 Before HEANEY, Circuit Judge, MILLER,* Judge, and COLLINSON,** Senior District Judge.
 
 
 4
 COLLINSON, Senior District Judge.
 
 
 5
 The plaintiffs-appellants appeal from summary judgments entered by the District Court[1] for each of the defendants, Folk Construction Company, Inc. (hereinafter referred to as "Folk") and the United States of America. We affirm.
 
 
 6
 This case arises out of the construction of the St. Francis Lake Control Structure in Drainage District No. 7, Poinsett County, Arkansas. The appellants are the owners and lessees of farm lands located in Poinsett and adjoining counties.
 
 
 7
 Defendant Folk, a Tennessee corporation, is a construction company. In 1972 it was awarded a contract by the Army Corps of Engineers, an agency of the defendant United States of America, to construct the St. Francis Lake Control Structure. During the construction in November 1972, the appellants' lands were flooded causing them to lose crops still in the field and the fields were too wet in the spring of 1973 to allow the planting of crops. Appellants allege the flooding was caused through the negligence of the Corps of Engineers and Folk in designing and building the Lake Control Structure.
 
 
 8
 Congress authorized the building of the St. Francis Lake Control Structure in 1965. Flood Control Act of October 27, 1965, Pub.L. No. 89-298, Sec. 204, 79 Stat. 1073, 1079. The design, developed by the Corps of Engineers and implemented by Folk, was for a gated structure that would allow the passage of water during periods of high water flow and hold water during periods of low flow. The gated structure was chosen instead of a fixed weir dam because the gated structure would be more effective in keeping the water level in St. Francis Lake at a constant level. S.Doc. No. 57, 89th Cong., 1st Sess. 5, 28-29 (1965).
 
 
 9
 The gated structure built by Folk was to regulate flow on ditch No. 60 at the foot of St. Francis Lake. The plans called for the construction of a cofferdam blocking off ditch No. 60 to protect the work area from water. While ditch No. 60 was closed, drainage was to pass through ditch No. 61. That ditch was unable to carry all the water after periods of heavy rainfall, resulting in the water backing up from the cofferdam and flooding the appellants' fields.
 
 
 10
 The plaintiffs have appealed summary judgments granted by the District Court in favor of both defendants. In reviewing a district court decision to grant a motion for summary judgment, we apply the same standard as the trial court. Butler v. M.F.A. Life Insurance Co., 591 F.2d 448, 451 (8th Cir.1979). Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). It is an extreme remedy and not to be granted unless the moving party "has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." Bellflower v. Pennise, 548 F.2d 776, 777 (8th Cir.1977). All facts are viewed in the light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences to be drawn from the facts. Howard v. Russell Stover Candies, Inc., 649 F.2d 620, 623 (8th Cir.1981).
 
 
 11
 Issues presented on appeal are whether the St. Francis Lake Control Structure was a "flood control" project for purposes of the immunity given the United States by 33 U.S.C. Sec. 702c (1976), whether "flooding" within the meaning of that statute occurred, and whether the governmental immunity, if applicable by statute, also insulated the construction company from liability.
 
 
 12
 Title 33, United States Code, Sec. 702c states that "[n]o liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place...." This Court has held that the purpose of this statute is to assure the government of absolute immunity for flood control projects so that Congress can safely appropriate the vast sums of money necessary for flood control without fear of further expense should any project itself result in flooding. National Mfg. Co. v. United States, 210 F.2d 263, 270-71 (8th Cir.1954).
 
 
 13
 This Court finds that the question of governmental immunity under 33 U.S.C. Sec. 702c is controlled by the ruling of this Court in Burlison v. United States, 627 F.2d 119 (8th Cir.1980). Burlison involved flooding caused by the Corps of Engineers alleged negligent design and construction of control structures and an access road in a different portion of the St. Francis Basin. Id. at 120. We affirmed a dismissal of the action, finding that the design and construction of an access road unquestionably was part of a flood control project. Id. at 121.
 
 
 14
 We likewise find in this case that there can be no serious question but that the St. Francis Lake Control Structure was part of a flood control project. It was a continuation of a long series of flood control projects in the St. Francis River Basin. See Flood Control Act of June 15, 1936, Ch. 548, 49 Stat. 1508; Flood Control Act of August 18, 1941, Ch. 377, 55 Stat. 638; and Flood Control Act of May 17, 1950, Ch. 188, 64 Stat. 168. Congress approved the structure as a modification of existing projects.[2] Flood Control Act of October 27, 1965, Pub.L. 89-298, Sec. 204, 70 Stat. 1073, 1079. Senate Document No. 57, incorporated by reference in the 1965 Flood Control Act, stated that one benefit of building a control structure was to pass flood flows safely and prevent deterioration of the river channel below St. Francis Lake. S.Doc. 57, at 5, 38.
 
 
 15
 Appellants argue that the question of whether or not the construction of the gated control structure under the above acts was a flood control project is an issue of fact. They argue that the actual purpose was to benefit hunters and fishermen by preserving the level of the lake in order to furnish a natural environment for fish and game. The government points out that this work was authorized by Public Law 89-298, approved October 27, 1965, 79 Stat. 1073. Section 204 of that Act states:
 
 
 16
 The following works of improvement for the benefit of navigation and the control of destructive floodwaters and other purposes are hereby adopted and authorized to be prosecuted under the direction of the Secretary of the Army and the supervision of the Chief of Engineers in accordance with the plans in the respective reports hereinafter designated and subject to the conditions set forth therein. The necessary plans, specifications, and preliminary work may be prosecuted on any project authorized in this title with funds from appropriations hereafter made for flood control so as to be ready for rapid inauguration of the construction program. The projects authorized in this title shall be initiated as expeditiously and prosecuted as vigorously as may be consistent with budgetary requirements.
 
 
 17
 One of the many projects in the list following in Section 204 reads as follows:
 
 
 18
 The project for the St. Francis River, Missouri and Arkansas, within Drainage District No. 7, Poinsett County, Arkansas, is hereby modified substantially in accordance with the recommendations of the Chief of Engineers in Senate Document No. 57, 89th Congress, at an estimated cost of $1,372,000.
 
 
 19
 The Senate Document No. 57 referred to above quotes the recommended modification. All of the above consist of modifications of flood control works authorized by the Flood Control Act of 1936. 49 Stat. 1508. It thus appears without question that this project was authorized and the funds appropriated for flood control.[3]
 
 
 20
 We also find that "flooding" occurred within the meaning of 33 U.S.C. Sec. 702c. Burlison, 627 F.2d at 121, clearly states the Eighth Circuit will make no distinction between "man-made" and "natural" flooding when analyzing the scope of Section 702c. There is no question flooding occurred. As we have determined that this is a flood control project, supra, there is no question but that the government is immune.
 
 
 21
 Having found the government immune, we now consider whether that immunity also protects Folk from the appellants' negligence claim. In considering that issue, we are obligated to follow the law of the State of Arkansas. The most recent Arkansas case we have discovered involving contractor immunity in flood control is Souter v. Carruthers, 237 Ark. 590, 374 S.W.2d 474 (1964). Our consideration of the facts and the law in that case leads us to conclude that Folk is immune from suit under Arkansas law.
 
 
 22
 In Souter the United States Corps of Engineers awarded a contract to the defendant contractor to repair two culverts in a levee. The contractor, in accordance with plans drawn by the Corps of Engineers, cut the height of the levee down to the level of the culverts. Cofferdams were constructed on both sides of the levee. When the project was temporarily shut down because of continued rainfall, the defendant followed instructions given by the Corps of Engineers and built a temporary dam for flood protection. A flood later washed away the dam and flooded the plaintiffs' land. A trial judgment for the plaintiffs was reversed by the Arkansas Supreme Court. It found no evidence that the contractor failed to follow the plans and specifications given by the Corps of Engineers. The contractor was under the direct supervision of the Corps of Engineers at all times. Thus, the Court found no proof of negligence in the construction on the part of the contractor and held no liability attached in the absence of negligence. 374 S.W.2d at 475-76.
 
 
 23
 This doctrine of "shared immunity" is well annotated in a note entitled "Right of Contractor with Federal, State, or Local Public Body to Latter's Immunity From Tort Liability" found at 9 A.L.R.3d 382, 386. Therein it states:
 
 
 24
 It is a well settled general principle that one who contracts with a public body for performance of public work, if not guilty of negligence or willful tort, and if not employing ultra hazardous methods, is entitled to share the immunity of the public body from liability for incidental injuries necessarily involved in the performance of the contract.
 
 
 25
 This doctrine of shared immunity is fully recognized in the following Arkansas cases: Southeast Construction Co. Inc. v. Ellis, 233 Ark. 72, 342 S.W.2d 485 (1961); Ben M. Hogan Co. v. Fletcher, 236 Ark. 951, 370 S.W.2d 801 (1963); Guerin Contractors, Inc. v. Reaves, 270 Ark. 710, 606 S.W.2d 143 (Ark.App.1980).
 
 
 26
 Appellants cite Stanton-White Dredging Co. v. Braden, 137 Ark. 127, 208 S.W. 598 (1919), to support their position that the contractor still can be negligent even if following government plans. The reported facts in that case are quite sketchy. The contractor was doing work under the direction of an engineer for a drainage district (apparently a state drainage district). He constructed a dam across the drainage ditch and some spillways to take care of backup waters. The Court held that the question of whether the contractor was negligent in not constructing a spillway near the plaintiff's land was a question for the jury. The doctrine of shared immunity was not discussed in the case, and, of course, it was written long before the Supreme Court case of Yearsley, et al. v. W.A. Ross Construction Co., 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940), the leading case establishing the shared immunity doctrine. We find that Souter v. Carruthers, supra, decided in 1964, is the controlling decision under Arkansas law.
 
 
 27
 Plaintiffs allege that the contractor was negligent in two respects, each of which would constitute an exception under the shared immunity principle. The first of these alleged grounds of negligence is that the contractor undertook this work pursuant to the plans of the Corps of Engineers which were so obviously defective that no reasonable man would follow them. Plaintiffs rely on the case of Person v. Cauldwell-Wingate Co., 187 F.2d 832 (2d Cir.1951). In that case the contractor installed high tension electric wires at an Army installation following the plans and specifications of the Army. Suit for the death of an electrician who came into contact with one of these high tension wires was brought against the contractor and subcontractor who did the actual work on the grounds that the plans for the installation of that particular wire were so obviously defective that the work should not have been performed in that manner. The United States was not a party defendant. Apparently there was no governmental immunity involved because that question was never discussed in the opinion. The Court held that since the evidence disclosed that the contractor had a professional electrical engineer on its staff who could have determined the danger from the plans and specifications, that the contractor could be held liable, but that since the subcontractor had no such expertise among its employees that there was no basis for liability against it. Because the doctrine of shared immunity was not involved in this decision, we find it of no value as a precedent in this case. The only case we have been able to discover involving this is the case of Engler v. Aldridge, 147 Kan. 43, 75 P.2d 290 (1938). In that case, the landowner predicated liability on the theory that the plans for highway improvement were so fundamentally defective and of such obviously poor engineering that an ordinary prudent man could have foreseen that the execution of such plans could cause unnecessary damage to plaintiff's land. Under these facts, the Court held that the contractor was entitled to share the immunity of the state. This Court feels that that case is the correct application of the shared immunity doctrine and that a contractor on a flood control project is entitled to rely upon the expertise of the Corps of Engineers in preparing its plans and specifications.
 
 
 28
 The other ground of liability alleged by plaintiffs against Folk is that Folk owed a duty to these plaintiffs, when flooding appeared imminent, to request permission from the Corps to tear down the cofferdam. Admittedly Folk could not remove the cofferdam, under the terms of the contract, without permission from the Corps. The deposition of plaintiff Daniel F. Portis established that before the flooding occurred this plaintiff and other landowners of the drainage district met at the dam site with two representatives of the Corps, a representative of Folk, members of the Game and Fish Commission and a consulting engineer for the drainage district. At the time of that meeting the cofferdam was almost completed and the landowners requested the representatives of the Corps to remove the dam to avoid the danger of flooding. The representatives of the Corps were from the Memphis office and there were later telephone calls to that office. In view of these facts, and the direct request of the landowners to remove the cofferdam, we can find no basis for liability on the part of Folk for not making a separate request to that effect.
 
 
 29
 Accordingly, the summary judgments in favor of the United States of America and Folk Construction Company are affirmed.
 
 
 
 *
 The Honorable Jack R. Miller, U.S. Circuit Judge, United States Court of Appeals for the Federal Circuit, who sat by designation
 
 
 **
 The Honorable William R. Collinson, Senior District Judge for the United States District Court for the Eastern and Western Districts of Missouri, sitting by designation
 
 
 [1]
 The Honorable Garnett Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas
 
 
 [2]
 The history of floodwater projects in the St. Francis Basin is given in S.Doc. 57, at 17-20
 
 
 [3]
 It should be noted that the Fish and Wildlife Coordination Act, Sections 661-666c of Title 16, United States Code, provides that all flood control projects administered by any department or agency of the United States shall be modified to incorporate in it features reasonably required to preserve and protect fish and wildlife and their habitats