ASSAM DRUG CO., INC.; Downtown, Inc., d/b/a Shoppers City Liquor of Mitchell, S.D., Plaintiffs,

v.

MILLER BREWING CO., INC., Defendant.

No. Civ. 84–4189.

United States District Court, D. South Dakota, S.D.

Dec. 23, 1985.

Charles Rick Johnson, Gregory, S.D., for plaintiffs.

Lawrence L. Piersol, Sioux Falls, S.D., Jerome I. Chapman, Thomas H. Milch and Douglas L. Wald, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

JOHN B. JONES, District Judge.

Plaintiff Assam Drug Co. is a beer retailer in Sioux Falls, South Dakota. Plaintiff Downtown, Inc. is a beer retailer in Mitchell. They allege that defendant Miller Brewing Company has entered into "a contract, combination, or conspiracy ... in restraint of trade or commerce" with each of its beer distributors in South Dakota in violation of S.D.C.L. Section 37–1–3.1, which is the state law equivalent of Sherman Act Section 1. *See* 15 U.S.C. § 1.

Specifically, the complaint alleges that in early 1983 defendant contractually granted to each of its beer distributors in South Dakota a precisely defined exclusive distribution territory. Pursuant thereto, each distributor has the sole right and responsibility to sell Miller products to beer retailers located within his territory. Plaintiffs allege that prior to the execution of this scheme they purchased all their Miller beer from Brewster Distributing Company in Watertown. Because plaintiffs are not located within the boundaries of Brewster's territory under the 1983 contract, plaintiffs claim that they are unable to continue purchasing beer from Brewster and instead each plaintiff must purchase Miller beer from the distributor for the territory where

he is located. Plaintiffs allege that as a result, their costs in acquiring Miller products has increased approximately 90 cents per case and that their retail sales of Miller beer have been substantially curtailed. Miller now moves for summary judgment.

Under Fed.Rule Civ.Proc. 56, summary judgment shall be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, "all facts are viewed in the light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences to be drawn from the facts." *Portis v. Folk Construction Co.*, 694 F.2d 520, 522 (8th Cir.1982).

S.D.C.L. Section 37–1–22 provides that federal court interpretations of the federal antitrust statutes may be used as a guide in interpreting the South Dakota statutes cited by plaintiffs in this case. In view of the scarcity of state case law on this subject and the existence of United States Supreme Court decisions which address the issues presented herein, it is appropriate for correct analysis of the issues presented by this motion to refer to the relevant federal law.

The exclusive distributorship agreements at issue in this case are classified in antitrust terminology as vertical non-price restraints; *i.e.*, restraints imposed by a manufacturer upon its chain of distribution which do not involve any form of resale price maintenance. *See White Motor Co. v. United States*, 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963); *Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977). As opposed to agreements among competitors themselves to allocate mutually exclusive territories, which are *per se* in violation of antitrust law, *see, e.g., United*

*States v. Sealy, Inc.*, 388 U.S. 350, 87 S.Ct. 1847, 18 L.Ed.2d 1238 (1967), vertical territorial restraints have been reviewed under the rule of reason analysis defined by the Supreme Court in *Board of Trade of the City of Chicago v. United States*, 246 U.S. 231, 38 S.Ct. 242, 62 L.Ed. 683 (1918). *See White Motor; Continental T.V., supra.* That rule, which has guided antitrust analysis for 68 years, provides that:

> The true test of legality is *whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition.* To determine that question the court must ordinarily consider the facts peculiar to the business to which the restraint is applied; its condition before and after the restraint was imposed; the nature of the restraint and its effect, actual or probable. The history of the restraint, the evil believed to exist, the reason for adopting the particular remedy, the purpose or end sought to be attained, are all relevant facts. This is not because a good intention will save an otherwise objectionable regulation or the reverse; but because knowledge of intent may help the court to interpret facts and to predict consequences.

*Chicago Board of Trade, supra,* at 246 U.S. at 238, 38 S.Ct. at 244 (emphasis added).

▮ As *Chicago Board of Trade* clearly states, application of the rule of reason test for whether or not a particular restraint is anticompetitive involves inquiry into the nature of the business and the restraints at issue. *See Continental T.V., supra,* 433 U.S. at 49, 97 S.Ct. at 2557. These issues are complicated in the case of vertical territorial restraints because of their potential for simultaneous reduction of intrabrand competition and stimulation of interbrand competition.[1] *Id.* at 51–52, 97 S.Ct. at 2558–59. Generally speaking, ver-

---

1. Intrabrand competition is the competition among distributors—wholesale or retail—of the product of a particular manufacturer. Interbrand competition is the competition among manufacturers of the same generic product (in this case beer). *see Continental T.V., supra,* 433 U.S. at 52 n. 19, 97 S.Ct. at 2558 n. 19.

tical restrictions reduce or eliminate intrabrand competition at one or more levels of the distribution process by limiting the number of sellers of a particular product competing for the business of a given group of buyers. *See id.* at 54, 97 S.Ct. at 2559. At the same time, they may promote interbrand competition by allowing manufacturers to achieve certain desirable or necessary efficiencies in the distribution of their products. *See id.* Since maintenance of vigorous interbrand competition is the primary concern of antitrust law, resolution of a vertical territorial restraint case depends upon a factual analysis of whether the restraints at issue do in fact enhance interbrand competition to the extent that, viewing defendant's business as a whole, they may be deemed pro-competitive. *See id.* at 52 n. 19, 97 S.Ct. at 2558 n. 19.

In support of its motion for summary judgment, Miller relies heavily on the notion of "market power" as a threshold legal requirement for unlawful vertical territorial restraints. As authority, Miller cites *Graphic Products Distributors, Inc. v. Itek Corp.*, 717 F.2d 1560 (11th Cir.1983), wherein the Eleventh Circuit held that the factors discussed in *Chicago Board of Trade* are "exceedingly general" and lack "an analytical framework for applying the rule of reason," and that *Continental T.V.* "provides us with little guidance as to how the rule should be applied." *Id.* at 1568 & n. 10. Therefore, the *Graphic Products* court found it prudent to "[narrow] the broad ranging inquiry called for by the rule of reason by insisting at the threshold, that a plaintiff attacking vertical restrictions establish the market power of the defendant." *Id.* at 1568.

The essence of market power, as discussed in *Graphic Products*, is the absence of substantial competition in the relevant market. *See id.* at 1570. While the reasons for a manufacturer's market power may require sophisticated economic analysis, its existence is reflected by and may be inferred from possession by defendant of a dominant market share. *See id.; Valley Liquors, Inc. v. Renfield Importers, LTD.*, 678 F.2d 742, 745 (7th Cir.1982). The absence of market power in the interbrand market, according to the Eleventh Circuit,

> "implies that the defendant is in competition with firms that sell products regarded by the consumer as close substitutes for the defendant's. The defendant will therefore lose most or all of its sales if its retail price exceeds its competitors' retail price for any reason, including a lack of intrabrand competition that drives its costs of distribution up."

*Graphic Products, supra,* at 1569 n. 11, *quoting* Posner, *The Next Step in the Antitrust Treatment of Restricted Distribution: Per Se Legality,* 48 U.Chi.L.Rev. 6, 16 (1981).

The logic behind this position is that in a competitive market the marketability of a manufacturer's product is in large part a function of quality and price. Therefore, it is plainly against the manufacturer's interest to create a distribution scheme which artifically increases the cost of his product, or is otherwise harmful to consumers. Rather, market forces compel the manufacturer to adopt the distribution system which allows him to maintain, promote, distribute and service his product in the most efficient manner and at the lowest cost possible. Where a firm employs a policy that ignores these forces, market retribution will itself correct the error.

Three circuit courts have utilized the market power test for analyzing vertical territorial restraints. *See Graphic Products, supra; Valley Liquors, supra; Muenster Butane, Inc. v. Stewart Co.*, 651 F.2d 292 (5th Cir.1981). It is the view of the Court that the market power test is analytically sound and consistent with the pro-competitive values expressed in *Chicago Board of Trade, White Motor* and *Continental T.V.* Therefore, the Court holds that a plaintiff challenging a vertical territorial restriction must show, at the threshold, the absence of substantial competition in the relevant product market through the possession by defendant of a dominant market share.

Rule 56(e) provides that

[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by the rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Defendant has submitted in support of his motion the affidavit of Miller Assistant Secretary and Assistant General Counsel Carroll A. Bodie. Therein Mr. Bodie states that for the year beginning July 1, 1984 and ending June 30, 1985 Miller's share of the interbrand beer market in South Dakota was 19.1%. At that same time, he states, Anheuser-Busch, Inc. and Stroh Brewery possessed market shares of 30.5% and 22.7%, respectively. Plaintiffs have offered nothing in response but the naked assertion that "these are self-serving statistical conclusions by Miller of which the plaintiffs have no knowledge." By the plain terms of Rule 56(e) plaintiffs have failed to meet their burden to show that there is a genuine issue for trial relating to the market share of defendant Miller Brewing Company. The market share figures contained in the Bodie affidavit manifest vigorous competition in the relevant product market. Applying the competition and market share criteria of the market power test discussed above, it is clear that defendant does not possess market power in the product market relevant to this case. Accordingly, defendant is entitled to judgment as a matter of law.

Now, therefore,

IT IS ORDERED that summary judgment is granted in favor of defendant.