HYMAN RUBIN and Others, Plaintiffs, *v.* EDWIN A. COLES and Others, Defendants.

City Court of New York, Kings County, November 23, 1931.

*Jacob Goebel,* for the plaintiffs.

*William Brooks,* for the defendants Coles.

GEISMAR, J. This is a trial of an action in foreclosure of three mechanics' liens filed by the three plaintiffs.

(1) The motion to dismiss all three liens on the ground that the real owner is not named must be denied. The evidence is that the defendant Edwin Coles was, at the time of filing, the last owner found of record by proper search in the register's office at which time his wife, although in possession, was an owner by unrecorded deed. There is authority for the holding that a filing against either the grantor as the record title owner or the grantee of .an unrecorded deed as owner in possession is valid saving only that if a question of priority of liens arises a lien filed against the owner in possession is to be given priority. (*Vogel & Binder Co.* v. *Montgomery Co.*, 133 App. Div. 836. See, also, Lien Law, § 13, as amd. by Laws of 1929, chap. 515, as to priority over an unrecorded deed.) Since all priorities, with one exception not material here, are eliminated by the present statute (§§ 13 and 56, as amd. by Laws of 1929, chap. 515), the filing proven herein is sufficient.

(2) The motion to dismiss the lien and the complaint of plaintiff John Bichler for the claim stated therein in the sum of $1,050 must be granted upon the evidence of Bichler himself that by assignment still in full force and effect at the time of the trial he had set over his claim to a third person who had made a settlement in full thereof with the owner.

(3) The two remaining plaintiffs prove claims under their liens as subcontractors in the total sum of $848.54. The general contractor, although testifying by its president as a witness in behalf of plaintiffs that there is still due to it the sum of $1,160 in the hands of the owner, filed no lien and commenced no action. Plaintiffs concede that they cannot recover unless it be proven that the owner holds, as still due to the general contractor, a sum sufficient to cover their claims, since they do not allege any promise by or agreement with the owner. Defendant owner counterclaims in the sum of $917, consisting of $792 claimed as and for equitable allowances (*Jacob & Youngs* v. *Kent*, 230 N. Y. 243) and $1,025 for defective work which had to be corrected, in all $1,817, from which is to be deducted $900, claimed to have been due and unpaid under the original contract.

(4) Taking up first the claim of defective work, there seems to be no material dispute as to the facts. The general contractor agreed to build an extension and to lay a proper foundation which was duly described by dimensions and footings in the blueprints and the plans. Some sixty days, more or less, after the work was finished, cracks appeared in the walls of the extension. Later the walls evidently began to buckle and the extension began to pull away from the main structure, apparently threatening a collapse. The condition was progressive, so that when two years later an

inspector from the department of buildings passed the premises and noticed the condition he immediately filed a violation. This violation is in evidence as plaintiff's Exhibit 7 and says: " You will please take notice that there exists a violation of the Building Code at the premises hereinafter described, in that an examination of this dwelling shows that the strata of soil at the level of the footings of existing two-story brick rear extension is unable to support the load imposed on same in violation of article 12, section 231, of the Building Code. This brick rear extension is settling away from the rear of the main dwelling and liable to become unsafe. You are required to make repairs to this rear extension and carry existing foundation walls down to soil having a sustaining power to support the superstructure." It is in evidence that this foundation was built on filled-in soil, a condition prevailing in many parts of the neighborhood known as Flatbush where this building is located. The general contractor now says that because he followed the plans drawn by the architect, he cannot be held responsible for this condition as long as he did his work in a competent and workmanlike fashion. As to the applicable principle of law, upon which the learned briefs of counsel have submitted nothing, there is considerable conflict in the different jurisdictions. (9 C. J. 754, § 90.) But the prevailing view is stated there to be as follows: "As a general rule the builder is responsible for defects caused by defects in the soil or by weather conditions, *notwithstanding he was bound by contract to follow plans and specifications prepared by an architect."* (Italics are mine.) This rule thus stated seems to accord with the New York State doctrine as laid down in the very recent case of *Dearstine* v. *Dunckel* (130 Misc. 281) and approved on appeal, although reversed on other grounds (223 App. Div. 795). That case says: " If the contract, plans and specifications had provided in detail as to the placing of the footings of the building *and the character of soil or fill upon which they were to be placed,* the risk of defective plans would rest with the owner. [Citing *Kuhs* v. *Flower City Tissue Mills Co.,* 104 Misc. 243.] The plans here involved were silent as to the method of construction of the foundation. *It was, therefore, the duty of the contractors to construct it upon solid ground,* so as to produce a level structure, even though it might have been necessary to make greater excavation or more substantial fill." (Italics are mine.) While it is true that here the plans provided footings, depths and dimensions, they are entirely silent as to that most important factor, the character of the soil or fill upon which the foundations therein described were to rest. This element was, therefore, left entirely to the skill and competency of the general contractor. There were two material facts present

to guide him: (1) The common knowledge, as proven in evidence, that this neighborhood consists largely of fill not yet solidly packed, and (2) the personal observation of the man on the spot who is put there with the expectation and reliance that he will use his training and experience to the end of correcting plans and specifications or at least of giving warning of their inadequacy to the nature of the subsoil. It develops as a finding of fact upon the evidence adduced herein that the contractor was grossly non-observant because these cracks began to appear in the walls of the extension in about sixty days after erection. It is in evidence also that the owner had to do this work anew at the end of two years at the very substantial cost of $1,025, when he had a right to expect that with work properly done, this extension would stand like any other substantial building for an indefinite period of years. It has been repeatedly held that even though he be bound to follow fixed plans and specifications, the contractor owes the duty to examine such plans and judge of their sufficiency; that he is bound to discover defects that are reasonably discoverable or patent, and where he knows or had reason to believe that the plans are defective and follows them without pointing out such defects to the owner or architect, he is not entitled to recover if the building proves insufficient because of such defects. (9 C. J. 753, § 87; *Northern Pacific R. Co.* v. *Goss*, 203 Fed. 904; *Burke* v. *Dunbar*, 128 Mass. 499; *Batcheller* v. *Hulme*, 76 Wash. 97; *Giles* v. *San Antonio Fdy. Co.*, 24 S. W. 546; *Moore* v. *U. S.*, 46 Ct. Cl. 139.) It follows that the owner must be allowed judgment on this counterclaim of $1,025.

(5) Various items in the sum claimed in the aggregate for allowances are shown to be excessive, and this claim is, therefore, reduced from $792 to $525, for which a counterclaim against the general contractor is allowed. The defendant owner is, therefore, allowed judgment on his counterclaim in the sum of $1,550. From this must be deducted the amount unpaid on the contract of $900 and $100 for extra work approved by the architect, altogether $1,000. The defendant owner, therefore, shall have a personal judgment against the general contractor in the sum of $550, the complaint is dismissed and all the liens are ordered vacated. Submit findings of fact and conclusions of law in accordance herewith.