Mario Pittoni, J.
The plaintiff builder sought a judgment for a declaration that the defendant buyers had breached their contract for the purchase of a dwelling to be constructed in the Village of Hewlett Harbor, and that it was entitled to retain the moneys paid under the contract as liquidated damages. The builder’s action, however, was discontinued at the trial, and the case continued on the basis of five counterclaims for rescission in the buyers’ answer.
The counterclaims alleged (a) fraud by the builder’s false representations as to the soil and bog conditions of the subject property; (b) untrue representations by the builder under a mistake of facts concerning the soil and bog conditions; (c) express warranty by the builder as to test borings of the soil and absence of bog under the model house and of the premises contracted for; (d) implied warranty by the builder that the soil was first-class soil, suitable for a first-class residence; and that the building to be erected thereon would be of first-class workmanship and material; and (e) breach of contract by the builder by tender of an improper certificate of occupancy, by failure of a lending institution to make a mortgage loan as required by the contract of sale, and by failure to complete the construction of the dwelling as required by the contract. The buyers sought, among their demands, the return of moneys paid *387 on the contract, the value of the improvements that they installed on the premises and damages to them for their failure to sell their own house.
Two other actions were tried together with the present one. In the first, T. & M, Electric Co., Inc., was employed by the buyers to perform certain electric work and is by stipulation entitled to recover $500. The buyers seek recovery for this sum against the builder. In the other action, Franklin Fabricators Corporation has brought an action against the builder and buyers to foreclose a mechanic’s lien. It is conceded by stipulation that Franklin Fabricators Corporation is entitled to recover $2,500 pursuant to agreement made with the buyers. The lien sought against the builder is on the theory that the work was performed with the knowledge and consent of the builder.
The first three counterclaims involve only a question of fact: Did the builder, on or before July 24, 1957 the date of the contract, make the alleged representations about the conditions of the soil on the subject property?
It appears that the buyers had owned a home in the Village of Hewlett Harbor since 1951. It was in the same general area of the subject property, was about one half to three quarters of a mile from the Bay, and was constructed on soil known to them to be bog. In fact, Lee Bailey, one of the buyers, stated that he had been trained as an engineer; that he knew that the entire village contained an underlying stratum of bog; and that he had served on a village committee whose objective was to solve the flood conditions in the village. He also stated that because of the floods and wet basements caused by the soil conditions in the area of his home, he had considered moving out of the village. His claim, however, is that he decided to remain upon the builder’s representation that there was no bog under the subject property. Lee Bailey said that he was “ pleasantly amazed ’ ’ at this information, that before the contract the builder twice showed him a copy of test borings demonstrating no bog, and that the builder told him that the test boring report was on file with the village. The Village Building Inspector Weeks stated, however, that no test boring reports were in the village’s possession or custody until the differences arose between the parties at a time long after the signing of the contract, and at a time approximating the closing date. Then, too, Lee Bailey did not discuss with his brother and attorney, Mitchell Bailey, prior to the signing of the contract, his anxiety concerning the condition of the soil or the builder’s assurance that the land contained no bog; and nothing concerning bog was included in the contract even though a copy of the contract *388 was in Ms attorney’s possession at least two months prior to its sigmng. Lee Bailey’s testimony was contradicted by the bMMer, and the latter’s position seems more tenable. On the basis of all the testimony, the buyers have failed to sustain their burden of proof on the allegations contained in the first three counterclaims; in fact, the court is convinced that the builder made no representations in respect to soil conditions, and that there was no reliance by the buyers on any such representations. Furthermore, the soil conditions of the property was not a material feature of the contract and tMs item appears to be an afterthought by the buyers after they decided not to take title to the house.
The buyers have also failed to sustain their burden of proof on the fourth counterclaim. For one thing, the warranty has been complied with in respect to workmanship and material. The buyers, however, rely on Rubin v. Coles (142 Misc. 139); Dearstine v. Dunckel (130 Misc. 281, revd. on other grounds 223 App. Div. 795); Russ v. Lakeview Development (133 N. Y. S. 2d 641) for the proposition that the plaintiff was duty bound to build on ground sufficient to produce a level structure even though it might have been necessary to make greater excavation or to supply more substantial fill. The Rubin case, however, was based upon the fact that it was common knowledge that the neighborhood consisted “ largely of fill not yet solidly packed ”. The Dearstine case was based upon the principle that the builder had a duty to construct on solid ground so as to produce a level structure. In the present case, however, there is insufficient proof to establish that the structure was not level or that the ground was not solid. In fact, two veteran experts, who testified on behalf of the builder, said that the ground of the subject property was solid and that bog, plus sand for 30 years, produced solid ground. The Russ case also fails to support the buyers’ position because it merely stated general principles of care required of the builder; and then the court decided in favor of the builder.
In the present ease it is unquestioned that there was bog underlying the subject property. This bog, however, had been covered by other soil to a depth of approximately seven feet, about 30 years previously. The theory of the buyers’ two experts, engineers Edward Denzer and Edward Sehnitzer, was that bog is a higMy compressible substance and that the pressing of weight upon it would cause it to compress more and the buildings erected upon it to sink. Their testimony is counterbalanced by that of three experts who testified on behalf of the builder. Mr. Fenton, president of Carman-Dunne, Inc., an engi *389 neer of 32 years’ experience in the locality of the subject property, Louis Weeks, the Village Inspector, an architect for 50 years and builder of some outstanding and large buildings in New York City and Europe, and Ira Kuchler, another architect, testified that the underlying stratum of the bog did not dangerously affect the building, that the building was properly constructed, and that it was safe. They were the experts who said that bog covered by sand for 30 years produced solid ground.
The buyers have failed to sustain their burden of proof on the fifth counterclaim. The contract contained the following provision: “ The issuance of a Certificate of Occupancy by the municipality wherein the building is or will be located shall be considered as completion of the building and compliance with this agreement, and purchasers shall close title to the premises thereon and without delay. All incompletions shall survive delivery of the deed. ’ ’ The certificate of occupancy was issued prior to the date set for closing. After the date set for closing, due to complaints made by the buyers, the certificate of occupancy was suspended by the village to investigate the buyers ’ complaints. After investigating the buyers’ complaints, the suspension was vacated and the certificate of occupancy reinstated. The fact that a valid certificate of occupancy was tendered the buyers on the date set for closing, and the fact that the certificate of occupancy was never revoked was sufficient compliance with the terms of the contract.
The buyers’ contention that they did not receive a mortgage commitment from a lending institution pursuant to the terms of the contract is also not sustained by the evidence. On March 24,1958 the date set for closing, the bank was ready and willing to make a mortgage loan as required by the contract. The testimony of Mr. Wilson, the mortgage officer of the bank, and Mr. De Vivo, one of the bank’s atorneys, shows that the bank refused to withdraw its commitment despite efforts by the buyers to get them to do so.
As for the buyers ’ contention that the dwelling was not completed at the time set for closing, the evidence shows that the contract had been substantially performed. The buyers had agreed in the contract to accept tender of a certificate of occupancy as evidence of compliance with the contract. Even if there were some incompleted items, the contract specifically provided that all incompleted items would survive delivery of the deed. There also was evidence presented that some of the items were not completed because of the actions of the buyers in not having completed work which they had started.
*390 The counterclaims of the defendant buyers are dismissed. Since the buyers have failed to sustain their counterclaims, plaintiffs T. & M. Electric Co., Inc., and Franklin Fabricators Corporation shall have judgments against the buyers for the amounts stipulated. The mechanic’s lien sought by Franklin Fabricators Corporation against the premises in question is also denied. There was no evidence to show that the builder consented to the improvements; therefore, there is no right to a lien (Delany & Co. v. Duvoli, 278 N. Y. 328; Lien Law, § 3).