Glen DIXON *v.* Charles A. LEDBETTER
and wife

77-114                                    561 S.W. 2d 294

Opinion delivered February 13, 1978
(In Banc)

*Bill F. Doshier,* for appellant.

*Ledbetter & Associates, Ltd.,* by: *Thomas D. Ledbetter,* for appellees.

GEORGE ROSE SMITH, Justice. In 1974 the appellant, a residential contractor, built a $60,000 home in Harrison for the appellees, pursuant to plans and specifications furnished by them. After the Ledbetters had occupied the house for a few months several comparatively minor defects developed. The defects were not corrected to the satisfaction of the Ledbetters, who eventually brought this suit against the con-

tractor for damages. Dixon's appeal from a decree in favor of the Ledbetters brings up for review the chancellor's rulings primarily with respect to two defects.

First, a concrete driveway, not reinforced with steel or wire, was poured upon fill ground varying up to 12 feet in depth. The fill settled and cracked the driveway to such an extent that even Dixon testified that about half of it would have to be replaced. Dixon insists, however, that he did the work in the manner that was customary in the community and that he told the Ledbetters in advance that the fill would settle.

That a contractor uses customary methods is a matter to be considered, but that standard does not necessarily meet the test of ordinary care. AMI Civil 2d, 1204 (1974); *Baker v. Pidgeon Thomas Co.,* 422 F. 2d 744 (6th Cir., 1970). Moreover, a contractor must use reasonable judgment in building on fill ground and may be expected to give warning if the soil is inadequate. *Rubin v. Coles,* 253 N.Y.S. 808, 142 Misc. Rep. 139 (1931).

Here the weight of the proof is not clearly contrary to the chancellor's finding that Dixon was at fault. Dixon testified that he told the dirt hauler, Youngblood, that he needed to pack the particular fill more with his tractor, but Youngblood denied having received such instructions. Youngblood also testified that settling could be controlled to some extent by means of a roller, but Dixon conceded that no roller was used. Dixon apparently told the Ledbetters that the fill would settle, but it is clear that he did not warn them of the possibility that the driveway might be so seriously damaged as to require partial replacement. The evidence supports the conclusion that some more explicit warning should have been given if Dixon intended for the Ledbetters to assume the risk of serious settling — a matter about which he may fairly have been expected to be better informed than the Ledbetters.

Second, there is proof indicating that two balconies were not properly built, in that the slope was not sufficient to cause rain water to drain away from the house. Dixon's insistence that he merely followed the plans is not tenable. The plans have not been abstracted and would hardly have prohibited

the contractor from incorporating sufficient slope in the construction.

The Ledbetters' expert witness, Landis, recommended that the defect be corrected by the installation of a copper pan (apparently simply a flanged sheet of seamless copper) on the plywood floor of each balcony. The sheets could be walked on and would conduct water away from the house. It is not a valid objection that such sheets were not included in the plans, for their purpose is to correct defects caused by faulty construction. Dixon disputes the existence of the defects and has not suggested a preferable remedy.

It is argued that the chancellor improperly relied upon hearsay testimony. Landis, an expert in remodeling and repairing houses, testified that it would cost $400 to repair each balcony. He said that Conward Allen had given him a figure of $250 to make each pan. Upon objection to this testimony as being hearsay, the court ruled: "I think if he is qualified in the business, he may give his estimate of what it would cost to make the corrections. He will not be permitted to say what somebody else told him. You can cross-examine him on whether or not he is an expert."

The court's ruling was right. We have previously held that at times an expert may base his opinion on facts learned from others, despite their being hearsay. *Arkansas State Highway Commn. v. Russell*, 240 Ark. 21, 398 S.W. 2d 201 (1966). That case-law principle has now been made more explicit by the Uniform Rules of Evidence, which were effective before this case was tried. Ark. Stat. Ann. § 28-1001 (Supp. 1977). Rule 703 provides:

> Basis of opinion testimony by experts. — The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Professor Field has explained the purpose of the rule, es-

pecially the final sentence:

> The plain intention of the rule is to bring judicial practice into line with the practice of experts themselves when not in court. For example, a physician in his own practice bases his diagnosis on information from a variety of sources such as hospital records, X-ray reports, statements by patients, and reports from nurses and technicians. Most of these could be presented in the form of admissible evidence, but only through a time-consuming process of authentication.

Field, A Code of Evidence For Arkansas?, 29 Ark. L. Rev. 1, 30 (1975).

The test stated in the rule is whether the expert's reliance is reasonable. It was not prima facie unreasonable for the expert witness in this case to ascertain the cost of the required pieces of sheet metal by consulting a supplier. As Field points out, the same cost figure could have been shown by calling the supplier as a witness. That cumbersome procedure is now readily avoidable; for the expert witness can be cross-examined about his expertise in the matter and about the reasonableness of a supplier's estimate. No such inquiry was made on cross-examination; so no error appears.

We find no merit in the argument that the court should have approved a mere temporary repair of one of the balconies. The appellant's final point, that the court should not have allowed the Ledbetters to recover $107 paid to Landis for certain unspecified repairs, is also without merit. Dixon seems to have had ample opportunity to make the repairs himself, and the amount is not shown to be excessive.

Affirmed.

FOGLEMAN and BYRD, JJ., dissent.

JOHN A. FOGLEMAN, Justice, concurring in part, dissenting in part. I do not agree that the preponderance of the evidence supports the holding that the contractor was liable on account of the settling of the driveway. Appellant testified that he told appellees that the driveway would settle for as

much as a year, but that they told him they did not want to wait a year for the settlement to take place before the concrete driveway was put on the fill. The testimony of appellee Charles A. Ledbetter on the subject was a virtual admission that appellant's subsequent testimony on the subject was correct. The settlement was a matter of "several inches" on a fill that sloped from the street level to the depth of the basement at the opposite end. I don't know what there is about the evidence that required a more explicit warning.

Otherwise, I agree with the result reached by the majority.

I would disallow the award of damages for replacement of the driveway.

I am authorized to state that Mr. Justice Byrd joins in this opinion.