Carla Blakemore CARTON *v.* MISSOURI PACIFIC
RAILROAD COMPANY

89-343                                              798 S.W.2d 674

Supreme Court of Arkansas
Opinion delivered November 12, 1990

*J.R. Nash*, for appellant.

*Herschel H. Friday, Elizabeth J. Robben, and Scott J. Lancaster*, for appellee.

ROBERT H. DUDLEY, Justice. Appellant, Carla Blakemore Carton, the driver of a diesel fuel transport truck, slipped and fell while unloading diesel fuel at appellee railroad's terminal in North Little Rock. She sued the railroad for its negligence in constructing and maintaining its facility. The case went to trial and, at the close of the plaintiff's case, the trial judge granted a directed verdict. We reverse and remand for a new trial.

The first argument we address is an evidentiary one involv-

ing the cause of plaintiff's injury. The plaintiff testified that in order to unload her truck after reaching the terminal, she had to walk across a surface which "was dirty, messy, greasy, you know, it was a diesel fuel place, you unloaded fuel there." She stated "spillage would accumulate and sit there." She testified that, while diesel fuel was being pumped from her truck into the facility, she climbed into the cab of her truck to fill out some forms and, shortly thereafter, started to get out when she slipped and fell. At that point in her case-in-chief, the following occurred:

Q. [appellant's counsel] What caused you to fall?
A. I believe it was the oil.

At this point there was an objection to a "belief" which was sustained. The ruling was in error.

A.R.E. Rule 701 provides:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are
(1) Rationally based on the perception of the witness; and
(2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.

Further, A.R.E. Rule 704 provides:

Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

■ Professor Weinstein explains that Rule 701 "seeks to balance the need for relevant evidence against the danger of admitting unreliable testimony. It recognizes that necessity and expedience may dictate receiving opinion evidence, but that a factual account insofar as feasible may further the values of the adversary system. . . . 'The opinion rule today is not a rule against opinions but a rule conditionally favoring them.' " ¶ 701[02] at 701-9.

■ Weinstein further explains that, in order to satisfy the first requirement of Rule 701, the testimony must initially pass the personal knowledge test of A.R.E. Rule 602. But, even if the witness does have the requisite personal knowledge, any infer-

ences or opinions he expresses must thereafter pass the rational connection and "helpful" tests of Rule 701. "The rational connection test means only that the opinion or inference is one which a normal person would form on the basis of the observed facts. He may express the opinion or inference rather than the underlying observations if the expression would be 'helpful to a clear understanding of his testimony or the determination of a fact in issue.' " *Id.* at 701-11. If, however, an opinion without the underlying facts would be misleading, then an objection may be properly sustained. *Id.* at 701-12, -13.

Here, plaintiff's testimony concerning the cause of her fall was based on her personal knowledge of the presence of fuel oil on the ground at the terminal. Further, the opinion that fuel oil on her shoes caused her to fall is one which a normal person would form on the basis of observed facts. Finally, plaintiff gave sufficient underlying facts to support the formation of her opinion regarding the cause of her fall. Since the answer was not considered by the trial judge in weighing the granting of the directed verdict, the ruling was prejudicial, and we must reverse.

The next assignment of error involves the granting of the directed verdict. The trial court held that the plaintiff failed to establish any substantial evidence supporting negligence on the part of the defendant railroad. The ruling was erroneous.

In ruling on a motion for a directed verdict, the trial court must view the evidence that is most favorable to the non-moving party and give it its highest probative value, taking into account all reasonable inferences deducible from it. *Kinco, Inc.* v. *Schueck Steel, Inc.*, 283 Ark. 72, 671 S.W.2d 178 (1984). If the evidence is so insubstantial as to require that a jury verdict for the non-moving party be set aside, then the motion should be granted. If, however, there is substantial evidence to support a jury verdict for the non-moving party, then it should be denied. *Id.*

Substantial evidence is that which is of sufficient force and character that it will compel a conclusion one way or another. It must force or induce the mind to pass beyond a suspicion or conjecture. *Id.*

The plaintiff presented seven witnesses. A summation of their testimony, viewed most favorably to plaintiff, is as follows.

The surface of the facility was composed of ³/₄ to 1 inch sized gravel which was graded to a drain running into the North Little Rock sewer system. The railroad changed the gravel at the facility only twice in a seven-year period. The unloading of each truck would cause a spill of at least a cup of fuel as the result of coupling and uncoupling the hoses connecting the trucks to the facility. Some drivers would drain the hoses onto the gravel. Sometimes hoses leaked. As many as thirty (30) trucks per day unloaded about five million gallons of fuel per month. The result was that the gravel "was soiled pretty badly with fuel." It was "dirty, messy, greasy . . . it was diesel fuel there." "Spillage would accumulate and sit there." The danger was obvious.

The plaintiff was a business invitee to the railroad's facility. The duties of occupiers of land to business invitees usually end when the danger is either know or obvious to the invitee. The plaintiff knew of the danger, and under normal circumstances the railroad's duty to plaintiff would be ended. However, the obvious danger rule does not bar recovery when the invitee is forced, as a practical matter, to encounter a known or obvious risk in order to perform his job. *Kuykendall* v. *Newgent*, 255 Ark. 945, 504 S.W.2d 344 (1974). Thus, the defendant railroad owed plaintiff a duty to use ordinary care to maintain the premises in a reasonably safe condition. See A.M.I. 1104.

There was testimony that the railroad could have reduced the amount of spillage resulting from poor couplings and leaks in hoses by installing an unloading pump at the facility. Without such a pump, it was necessary to use the pumps on each individual truck to unload that truck. When the pump on a truck was used, it pushed the fuel out of the truck storage compartment and into the facility. If a pump at the facility had been installed and used, it would have drawn the fuel out of the trucks by creating a vacuum. As a result, the facility pump would lessen the leakage from poor couplings or holes in hoses. In addition, a concrete surface would have been "better" for the drivers. In sum, when the testimony is viewed in a light most favorable to the plaintiff, the non-moving party in the motion for a directed verdict, there was substantial evidence from which a jury might have found that the railroad did not maintain the premises in a reasonably safe manner because it failed to (1) remove "greasy" and "messy" gravel from the surface; (2) did not use a concrete

surface; or (3) did not install a pump at the terminal.

For the reasons set out above, we reverse and remand the case. Plaintiff makes two additional arguments, neither of which has merit, but because the same arguments are likely to arise again at retrial, we summarily address them.

■■■ She argues that the trial court erred in refusing to allow her to introduce into evidence a complaint filed in federal court by the Environmental Protection Agency against the railroad. The trial court did not err in its ruling for at least two reasons. First, the complaint was hearsay and second, it was not relevant. She also argues that the trial court did not allow her sufficient leeway in impeaching one of her own witnesses. Clearly, A.R.E. Rule 607 allows one to impeach her own witness. However, the extent to which one can examine her own expert witness for purposes of impeachment is within the sound discretion of the trial court, and appellant has not shown how the trial court abused that discretion.

■■■ On cross-appeal, the cross-appellant railroad argues that the trial court erred in refusing to delete part of a sentence from an otherwise admissible medical report. The background necessary to understand the argument is as follows. It was cold and was "spitting snow" when the accident happened. The railroad contends the plaintiff's fall may have been caused by snow on the sole of her boot. Plaintiff contends her slip was caused by diesel fuel on her boot. Causation is one of the main points in the case. As part of her proof of causation plaintiff sought to put in evidence of a medical report. The railroad objected to that part of the report which is underlined below. "At the time she was in the process of getting out of the truck her foot slipped having apparently accumulated some diesel fuel on her sole. . . ." Upon retrial the underlined part of the sentence should be excised.

Under A.R.E. Rule 803(4) a patient's statements are admitted under the following conditions:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external source thereof *insofar as reasonably pertinent to diagnosis or treatment.*

(Emphasis added.)

The basis for this hearsay exception is the patient's strong motivation to be truthful in giving statements for diagnosis and treatment. Cotchett and Elkind, *Federal Courtroom Evidence* 144 (1986). Also admissible under the rule are statements regarding the cause of the condition, *if pertinent to the diagnosis or treatment.* However, where such information is not relevant for diagnosis, but rather attempts to fix blame, it may be excluded. *Id.,* citing federal cases. "Thus a patient's statement that he was struck by an automobile would qualify but not his statement that the car was driven through a red light." *Id.* Similarly, plaintiff's statement that her foot slipped and she fell was admissible, but not that she had "apparently accumulated some diesel fuel on her sole." The latter phrase was not pertinent to diagnosis or treatment given by the physician, and, more importantly, the patient had no motivation to be truthful in the statement because she knew that it would not matter in her treatment whether she had snow or diesel fuel on her boot. Thus, there is no basis for the hearsay exception.

Cross-appellant railroad's last argument is that the trial court erred in ruling that the plaintiff was competent to testify.

In *Logan v. State*, 299 Ark. 266, 773 S.W.2d 413 (1989), we wrote:

A trial court must begin with the presumption that every person is competent to be a witness. A.R.E. Rule 601. The burden of persuasion is upon the party alleging that the potential witness is incompetent. To meet that burden the challenging party must establish the lack of at least one of the following: (1) the ability to understand the obligation of an oath and to comprehend the obligation imposed by it; or (2) an understanding of the consequences of false swearing; or (3) the ability to receive accurate impressions and to retain them, to the extent that the capacity exists to transmit to the factfinder a reasonable statement of what was seen, felt or heard. *Jackson v. State*, 290 Ark. 375, 720 S.W.2d 282 (1986). The competency of a witness is a matter lying within the sound discretion of the trial court and, in the absence of clear abuse, we will not reverse on appeal. *Hoggard v. State*, 277 Ark. 117, 640 S.W.2d 102

(1982).

Here, the trial court examined the plaintiff with regard to the above criteria and found she was competent to testify. That finding was not an abuse of the trial court's discretion.

Reversed on direct and cross-appeal.