Eugene Donnell SCOTT *v.* STATE of Arkansas

CR 94-754                                         888 S.W.2d 628

Supreme Court of Arkansas
Opinion delivered November 21, 1994

*William R. Simpson, Jr.,* Public Defender, by: *C. Joseph Cordi, Jr.,* Deputy Public Defender, for appellant.

*Winston Bryant,* Att'y Gen., by: *Sandy Moll,* Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, Eugene Donnell Scott, appeals a judgment of the Pulaski County Circuit Court convicting him of first degree murder and aggravated assault and sentencing him consecutively to thirty-five years and six years respectively in the Arkansas Department of Correction. Jurisdiction of this case is in this court pursuant to Ark. Sup. Ct. R. 1-2(a)(2). We find no error and affirm.

Appellant's two convictions were the result of a single incident occurring at approximately 1:00 a.m. on January 18, 1993, outside the Butler Apartments in Little Rock. Appellant was charged with the murder of Linda Kitchens and the assault of Valerie Jackson. Appellant and Ms. Kitchens had been arguing inside an apartment. Ms. Kitchens was the sister of appellant's girlfriend, Dionne Dantzler. Ms. Kitchens left the apartment and entered the back seat of a Ford Taurus; Ms. Jackson was in the driver's seat. Ms. Dantzler struggled with appellant before and after he fired approximately seven or eight shots at the Taurus with Ms. Kitchens and Ms. Jackson inside. Ms. Kitchens suffered a single gunshot wound to the head. She survived neurosurgery but later died from the gunshot wound.

As his sole point for reversal, appellant argues the trial court erred in admitting certain testimony of state's witness, Dr. Frank Joseph Paretti, a forensic pathologist from the Arkansas State Crime Laboratory who conducted the autopsy on Ms. Kitchens. Specifically, appellant challenges the following portion of Dr. Paretti's testimony relating the location of the entrance wound to Ms. Kitchens' head: "Well, according to the neurosurgeons, the entrance wound was situated on the right parietal scalp." This statement was allowed after appellant's hearsay objection. The trial court sustained a later hearsay objection and then directed the prosecutor to limit the doctor's testimony to stating what his findings were based on the reports that he evaluated. Appellant also challenges Dr. Paretti's testimony that the neurosurgeons removed the entrance and exit wounds. Appellant reasons, then, that the autopsy was based on the neurosurgical charts, rather than Dr. Paretti's personal knowledge; therefore, appellant argues the testimony was inadmissible hearsay. Appellant contends the testimony, being hearsay, was admitted for the truth of the matter asserted — that the bullet entered from the right side. Appellant emphasizes the importance of the location of the entrance

wound because that information was part of the evidence the jury was allowed to consider in determining whether appellant was the person who fired the shot that killed Ms. Kitchens.

The admissibility of expert testimony rests in the broad discretion of the trial court. *Smith* v. *State*, 258 Ark. 601, 528 S.W.2d 389, *cert. denied*, 425 U.S. 912 (1975). Consequently, we will not reverse a trial court's ruling on these issues unless the appellant demonstrates an abuse of that discretion. *Sims* v. *Safeway Trails, Inc.*, 297 Ark. 588, 764 S.W.2d 427 (1989).

Citing *Sims*, 297 Ark. 588, 764 S.W.2d 427, and *Surridge* v. *State*, 279 Ark. 183, 650 S.W.2d 561 (1983), the state contends the challenged testimony was admissible under ARE Rule 703. Rule 703 provides that an expert witness may base his opinion on facts or data inadmissible in evidence if of a type reasonably relied upon by experts in the particular field. *Surridge*, 279 Ark. 183, 650 S.W.2d 561; *Dixon* v. *Ledbetter*, 262 Ark. 758, 561 S.W.2d 294 (1978). The test stated in Rule 703 is whether the expert's reliance is reasonable. *Id.* Dr. Paretti testified that his procedure for conducting autopsy examinations included examining reports from other medical agencies and police agencies. He also testified that, with respect to the gunshot wound proceeding from the right side to the left side of Ms. Kitchens' brain, he could not tell which was the entrance wound and exit wound without relying on the notes of the neurosurgeon. We cannot say it was unreasonable for Dr. Paretti to rely on the neurosurgeons' reports.

The very purpose of Rule 703 is to allow the courts to follow the same practice as do experts themselves in forming their opinions, illustrated, for example, by allowing a physician to base his diagnosis on reports from other medical sources. *Surridge*, 279 Ark. at 160, 650 S.W.2d at 565; *Dixon*, 262 Ark. at 762, 561 S.W.2d at 296. Moreover, when an expert's testimony is based on hearsay, the lack of personal knowledge on the part of the expert does not mandate the exclusion of the testimony, rather it presents a jury question as to the weight of the testimony. *Arkansas State Hwy. Comm'n* v. *Schell*, 13 Ark. App. 293, 683 S.W.2d 618 (1985). There was no abuse of discretion in allowing the challenged testimony.

The judgment is affirmed.