Bryan Hank COLLINS *v.* Florida HINTON

96-171                                                     937 S.W.2d 164

Supreme Court of Arkansas
Opinion delivered February 3, 1997

[Petition for rehearing denied March 10, 1997.]

*Butler, Hicky & Long*, by: *Phil Hicky* and *Rita Reed Harris*, for appellant.

*Easley, Hicky, Cline, & Hudson*, by: *B. Michael Easley*, for appellee.

DONALD L. CORBIN, Justice. Appellant Bryan Hank Collins appeals the jury's verdict awarding damages of $150,000 to Appellee Florida Hinton from the St. Francis County Circuit Court. Because this case involves a question concerning the law of torts, this court has jurisdiction of the appeal pursuant to Ark. Sup. Ct. R. 1-2(a)(15) (as amended by per curiam July 15, 1996). Appellant raises four points on appeal, two of which are components of

one argument: (1) The trial court erred in allowing Dr. Raymon Lopez to give expert testimony concerning Appellee's injuries; (2) the trial court erred in excluding the testimony of one of Appellant's witnesses; and (3) the damages awarded by the jury are excessive. Because we find no merit to any of Appellant's arguments, we affirm.

This case involves an automobile accident that occurred on December 10, 1992. According to the facts presented at trial, Appellee had just left the home of Mrs. Betty Proctor, where she worked in a domestic capacity, and had walked across the street to her car. As she began to get into her car, her car was struck from behind by Appellant's truck. As a result of the impact of the collision, Appellee's car was forced forward approximately forty-eight feet from where it had been originally parked, dragging Appellee with it. Appellee was taken to the hospital emergency room where she was treated and ultimately hospitalized overnight.

The emergency-room diagnosis revealed that Appellee had a hematoma to the right thigh as well as various abrasions and contusions. Appellee also complained of pain in her right hip. The x-rays taken at the hospital revealed that Appellee had degenerative arthritis in some of her joints. In January of 1993, Appellee consulted a chiropractor, Dr. Xavier Haymer, and began receiving regular treatments from him. According to Dr. Haymer, Appellee complained about pain in her lower back, her right hip and thigh area, and her right knee. Additionally, Dr. Haymer observed that Appellee's right knee and ankle were swollen. Appellee stated to Dr. Haymer that the pain in her knee had resulted from the accident and that she had not had any pain in her knee before that time. Dr. Haymer continued to treat Appellee for just over a year, at which time he referred her to an orthopedic surgeon, Dr. Raymon Lopez, concerning the injury to her knee.

After reviewing the information supplied to him by Dr. Haymer and taking a patient history from Appellee, Dr. Lopez examined Appellee's knee. Appellee informed Dr. Lopez that she began experiencing pain in her knee after being involved in the automobile accident. As a result of his examination and the other pertinent information, Dr. Lopez recommended that Appellee

undergo surgery to replace her knee. In an affidavit filed with the trial court, Appellee confirmed that she wished to undergo the knee surgery, but that she did not have insurance and that Medicare would not cover the procedure.

Appellee filed suit against Appellant in September of 1993 alleging that he was negligent in the operation of his vehicle and that she was injured as a result. Trial was conducted on June 28 and 29, 1995. Subsequent to her examination by Dr. Lopez but before trial in this matter had begun, Appellee suffered a stroke, and was confined to a wheelchair and unable to talk for the duration of the trial. Appellee was only able to testify through a deposition taken before her stroke. At the conclusion of the case, the jury returned with a verdict finding Appellant negligent and awarding compensatory damages to Appellee in the amount of $150,000. This appeal followed.

## I. Testimony of Dr. Lopez

Appellant argues on appeal that it was error for the trial court to allow Dr. Lopez to testify as an expert witness on two grounds: (1) His opinion and evaluation were based in part on the hearsay statement of Appellee concerning the cause of her knee injury; and (2) the doctor's examination and recommendation of knee surgery, which preceded Appellee's stroke, may have no longer been valid because there was no indication that Appellee would ever walk again after the stroke.

In the present case, Appellee was referred by her chiropractor to seek an evaluation of her injuries by Dr. Lopez. Dr. Lopez testified that in reaching his conclusion that Appellee needed to undergo knee-replacement surgery, he relied upon the patient history given by Appellee, as well as his physical examination of her and the information provided to him by Dr. Haymer. Dr. Lopez testified further that it was common practice for a physician to rely at least in part on the patient's history of the injuries. Dr. Lopez related that as to the symptoms of pain experienced by Appellee in her back and knee, Appellee stated the symptoms started after a motor vehicle accident that she had been involved in about a year prior to seeing Dr. Lopez. Specifically, Appellee told

Dr. Lopez that she was experiencing pain, swelling, and stiffness in her right knee.

Appellant argues that Dr. Lopez's opinion as to the cause or aggravation of Appellee's knee injury was based entirely on Appellee's statement, and that such a statement was hearsay and not included as an exception to the hearsay rule found in A.R.E. Rule 803(4) because it was made to the doctor after litigation had begun and was, therefore, self-serving. Appellee responds that Dr. Lopez's testimony, including statements made to him by Appellee, was admissible under A.R.E. Rule 703 and that there is no provision in Rule 803(4) that prohibits statements given after litigation has begun. Appellee responds further that Appellant's objection to Dr. Lopez's testimony goes to the weight of the evidence, rather than its admissibility, and that there was no evidence presented at trial indicating that Appellee would never be able to walk again. We find no error in the trial court's decision to permit Dr. Lopez to testify on either ground raised by Appellant.

This court has long recognized that the admissibility of expert testimony rests largely within the broad discretion of the trial court and the appellant bears the burdensome task of demonstrating that the trial court abused its discretion. *See, e.g., Sims v. Safeway Trails, Inc.*, 297 Ark. 588, 764 S.W.2d 427 (1989); *Dildine v. Clark Equipment Co.*, 282 Ark. 130, 666 S.W.2d 692 (1984). In support of his argument, Appellant asserts that Dr. Lopez was not Appellee's treating physician, and thus, he should not have been allowed to provide hearsay testimony concerning Appellee's patient history because such hearsay falls outside the medical–diagnosis exception found in Rule 803(4). Additionally, Appellant relies heavily on this court's decision in *Ben M. Hogan Co., Inc. v. Nichols*, 254 Ark. 771, 496 S.W.2d 404 (1973), in support of his contention that only a treating physician, as opposed to a medical expert witness consulted solely for the purpose of providing trial testimony, may give opinion testimony pertaining to injury. Appellant also cites this court to its decision in *Carton v. Missouri Pac. R.R. Co.*, 303 Ark. 568, 798 S.W.2d 674 (1990), in support of his contention that statements made by persons as to pain for the sole purpose of furnishing an expert with information on which to base his opinion are not admissible.

Rule 702 of the Arkansas Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Rule 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, *the facts or data need not be admissible in evidence.* [Emphasis added.]

Pursuant to Rule 703, an expert witness may base his opinion on facts or data in evidence, which may otherwise be inadmissible, if they are of a type reasonably relied upon by experts in the particular field; the test is whether the expert's reliance on such information is reasonable. *Scott v. State*, 318 Ark. 747, 888 S.W.2d 628 (1994); *Dixon v. Ledbetter*, 262 Ark. 758, 561 S.W.2d 294 (1978). In *Wolner v. Bogaev*, 290 Ark. 299, 718 S.W.2d 942 (1986), this court held that "obviously the requirement of personal knowledge has no application to an expert witness who is, in many instances, testifying to an opinion based entirely on assumed facts." *Id.* at 303, 718 S.W.2d at 944. In *Scott*, 318 Ark. 747, 888 S.W.2d 628, this court stated:

> The very purpose of Rule 703 is to allow the courts to follow the same practice as do experts themselves in forming their opinions, illustrated, for example, by allowing a physician to base his diagnosis on reports from other medical sources. Moreover, when an expert's testimony is based on hearsay, the lack of personal knowledge on the part of the expert does not mandate the exclusion of the testimony, rather it presents a jury question as to the weight of the testimony.

*Id.* at 749, 888 S.W.2d at 629 (citations omitted). Similarly, the court of appeals observed in *Arkansas State Hwy. Comm'n v. Schell*, 13 Ark. App. 293, 683 S.W.2d 618 (1985), that under Rule 703 "an expert must be allowed to disclose to the trier of fact the basis

facts for his opinion, as otherwise the opinion is left unsupported in midair with little if any means for evaluating its correctness." *Id.* at 298, 683 S.W.2d at 621. Rules 702 through 705 emphasize the function of cross-examination, with the burden being placed upon the opponent of the testimony to show that the expert's conclusion lacks adequate support in order for the testimony to be subject to being stricken by the trial court. *Id.* at 299, 683 S.W.2d at 622.

In *Carton*, 303 Ark. 568, 798 S.W.2d 674, this court held that a portion of the plaintiff's statement to a doctor concerning the cause of her injury should have been excluded as it did not fall within the hearsay exception in Rule 803(4). Appellant relies on that holding in support of his argument, but the facts presented in that case differ greatly from those presented below. In fact, the holding in *Carton* clearly supports the trial court's decision in this case to admit the testimony of Dr. Lopez. In *Carton*, the plaintiff sued the railroad company claiming that she was injured when she slipped on some spilled diesel fuel and fell. The doctor's medical report, which was admitted into evidence, stated that, "[a]t the time she was in the process of getting out of the truck her foot slipped *having apparently accumulated some diesel fuel on her sole* [.]" *Id.* at 574, 798 S.W.2d at 677. This court held that the underlined words should have been excluded as that portion of her statement was not relevant for diagnosis and attempted only to fix blame. This court noted, however, that, "'a patient's statement that he was struck by an automobile would qualify but not his statement that the car was driven through a red light.'" *Id.* at 575, 798 S.W.2d at 677 (quoting Cotchett and Elkind, *Federal Courtroom Evidence* 144 (1986)). The challenged information given by Dr. Lopez in the present case would likewise qualify as an exception to the hearsay rule found in Rule 803(4).

In *Hogan Co.*, 254 Ark. 771, 496 S.W.2d 404, which was rendered before this court adopted the Arkansas Rules of Evidence in 1986, the expert witness was a doctor who had been retained for purposes of testifying at trial. The doctor stated that the plaintiff had been referred to him by his attorney and that when the plaintiff consulted him, the plaintiff's wife and his attorney were also present and assisted the plaintiff in reciting his

patient history. The doctor also stated that he had not intended to treat the plaintiff's condition. This court held that the trial testimony conclusively established that the witness was not a treating physician, but that he occupied the exclusive role of a medical expert witness whose testimony was secured for purposes of giving an opinion at trial. The facts presented below starkly contrast the facts presented in the *Hogan Co.* case since Appellee consulted Dr. Lopez for possible treatment.

Contrary to Appellant's argument, Dr. Lopez was a treating physician for purposes of testifying as to the nature, extent, and cause of her injuries. His expert testimony was not sought by Appellee or her attorney for the purpose of testifying at trial; rather, Dr. Lopez examined Appellee's injuries upon referral by Dr. Haymer. That Appellee had not actually had the knee-replacement surgery prior to trial does not change the fact that Dr. Lopez examined Appellee for the purpose of diagnosing her injuries, and that the doctor made suggestions as to the proper treatment of those injuries. Ultimately, Dr. Lopez testified that in his opinion, Appellee's knee injury was not caused by the collision, but that it was very possible that her preexisting condition of degenerative arthritis was aggravated by the trauma of the collision. Likewise, Dr. Haymer also testified that he believed Appellee's condition was aggravated in the accident.

Appellant has not met his heavy burden of demonstrating that the trial court abused its discretion by permitting the witness to testify or that he was unfairly prejudiced by Dr. Lopez's testimony, especially in light of the fact that Dr. Haymer had also testified as to the cause or aggravation of Appellee's injuries. The pertinent provisions of the Arkansas Rules of Evidence and case law clearly support the trial court's decision to admit the testimony. Furthermore, Appellant conducted extensive cross-examination of Dr. Lopez in an attempt to show that his opinion was unreasonable in that it was not supported by the facts. The fact that the jury chose to believe the testimony of the doctor is insufficient to meet Appellant's burden on appeal.

As for Appellant's remaining contention that Dr. Lopez should not have been permitted to testify as to Appellee's need for

knee-replacement surgery because she had since suffered a stroke, we agree with Appellee that such an argument is more properly directed toward the weight to be attached to the evidence, rather than its admissibility. As Appellee points out, Appellant could have chosen to put on evidence that Appellee would never be able to walk again, had such evidence existed, in an attempt to demonstrate that the surgery was no longer necessary. We find no error in the trial court's ruling upon either argument presented by Appellant.

## II. Exclusion of Defense Witness

Appellant argues that the trial court erred in refusing to allow him to present the testimony of Mrs. Kelly Henson on the ground that he had failed to notify Appellee that she would be called as a defense witness. Appellant further argues that the trial court abused its discretion in excluding this witness's testimony absent some showing that his attorney knowingly concealed the name and address of the witness from Appellee's counsel. We do not agree with Appellant's assessment of our standard of review in these cases, nor are we convinced that the trial court did not find that Appellant's counsel had knowingly concealed the identity of this witness.

Rule 26 of the Arkansas Rules of Civil Procedure provides in pertinent part:

> (b)(1) . . . Parties may obtain discovery regarding any matter, not privileged, which is relevant to the issues in the pending actions, . . . including the existence, description, nature, custody, condition, identity and location of persons who have knowledge of any discoverable matter or who will or may be called as a witness at the trial of any cause.
>
> . . . .
>
> (e)(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to (A) the identity and location of persons having knowledge of discoverable matters, and (B) the identity and location of each person expected to be called as a witness at trial . . . .

(2) A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which (A) he knows that the response was incorrect when made, or (B) he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

■ The standard of appellate review of decisions by the trial court to exclude or permit the testimony of any witness at trial is whether the trial court has abused its discretion. *Marvel v. Parker*, 317 Ark. 232, 878 S.W.2d 364 (1994); *F.L. Davis Builders Supply, Inc. v. Knapp*, 42 Ark. App. 52, 853 S.W.2d 288 (1993). In light of the facts and circumstances demonstrated below, the trial court did not abuse its discretion in excluding the testimony of Mrs. Henson.

At the conclusion of Appellee's case as plaintiff, Appellee's counsel informed the trial court that he had learned through the course of the trial that Appellant intended to call Mrs. Henson as a witness. Appellee's counsel objected to her being allowed to testify on the ground that he had no prior notice of her testimony. Appellee's counsel stated further that he had specifically requested the names and addresses of Appellant's witnesses in interrogatories and that in both the initial and supplemental answers to the interrogatories, Appellant had failed to mention Mrs. Henson.

Appellant's counsel argued below, as he does on appeal, that although he did not actually list Mrs. Henson as a witness in either request by Appellee, Appellee nonetheless had notice of the witness because she was mentioned, not by name, but only by a reference to the wife of Lester Henson, in a deposition conducted by Appellee's counsel with Mrs. Betty Proctor. Appellant's counsel argued further that he indicated in both answers to interrogatories that he was continuing to investigate the case and that he reserved the right to call additional witnesses who surfaced as a result of his investigation or through the discovery process. Appellant's counsel also asserted that he had announced Mrs. Henson as a witness during *voir dire*, and that Appellee was at least put on notice as of the first day of the trial. Appellant's counsel alternatively argued that even though Appellee had not received proper notice of the witness, Appellee's case would not be prejudiced by Mrs. Hen-

son's testimony, as she was present at the scene of the accident and would only tell the truth as to what she saw. In response, Appellee's counsel stated that Mrs. Henson's anticipated testimony would directly contradict Appellee's proof and would force him to secure additional witnesses, including her husband and son, for rebuttal.

After considerable argument between counsel for both sides, the trial court stated:

> I don't like for you all to put me in this situation. I would like to say a whole lot more than I'm going to because I don't want to mess up this record but Mr. Hicky, I'm not going to let her testify because I don't think this is just a lack of response.

In response to the trial court's ruling, Appellant's counsel denied trying to "sandbag" Appellee's counsel and argued that he had only learned of the location of Mrs. Henson approximately two days before trial. Appellant's counsel stated that the reason that he had not called opposing counsel to inform him of the witness's name and address as soon as he had learned of the information was because he "was actually getting ready for trial[.]" We can only assume that by his remarks Appellant's counsel was telling the trial court that he was too busy or occupied with trial preparation to notify Appellee's counsel by telephone of this witness's existence. It is significant, then, that Appellant's counsel did apparently have time to have the clerk's office issue a trial subpoena for Mrs. Henson on the day before trial. Under the circumstances, we conclude that the trial court did not abuse its discretion in excluding the witness's testimony.

### III.   Damages

Appellant asserts that he is entitled to a new trial, or at least a remittitur of the damages, because the jury's award of $150,000 is excessive and is not supported by the evidence presented at trial. Appellant further stresses that the jury was impermissibly swayed by compassion for Appellee, who sat through the trial in a wheelchair. Appellee asserts that the jury's award was not excessive and not wholly unsupported by the evidence.

■ When an award of damages is alleged to be excessive, we review the proof and all reasonable inferences most favorably to the appellee and determine whether the verdict is so great as to shock the conscience of this court or demonstrate passion or prejudice on the part of the trier of fact. *Builder's Transp., Inc. v. Wilson*, 323 Ark. 327, 914 S.W.2d 742 (1996). In determining whether the amount of damages is so great as to shock the conscience, we consider such elements as past and future medical expenses, permanent injury, loss of earning capacity, scars resulting in disfigurement, and pain, suffering, and mental anguish. *Id.* We make such determinations on a case-by-case basis, as precedents are of little value in appeals of this kind, with the understanding that a jury has much discretion in awarding damages in personal injury cases. *Id.* In the present case, we conclude that the damages awarded to Appellee were not so great as to shock this court's conscience and, thus, we affirm.

Appellee, who was seventy-two years old, testified in her deposition that when Appellant's truck crashed into her car, she "hugged" the driver's seat and held on all the while she was being dragged backwards for some fifty feet. She stated that she was in constant pain and that she is in "misery" at night because the pain was coming up into her arms and had "messed up" that whole side of her body. In her affidavit, Appellee stated that she had no medical insurance to cover any of the recommended treatments for her injuries.

Mrs. Betty Proctor testified that before the accident, Appellee was active for her age and got around well. She also stated that after the accident, Appellee was in constant pain and had to wear a knee brace and walked with the assistance of a cane. She stated that after the accident, Appellee's working days were finished. She further stated that Appellee's lack of mobility because of the knee injury was such that she could no longer perform such simple tasks as picking up her own laundry basket and carrying it to the washer.

The jury was also furnished medical evidence through Dr. Haymer that the pain in Appellee's lower back and knee will continue into the future. Dr. Lopez testified that when he

examined her, Appellee could hardly get up from a sitting position without assistance and that her knee was "completely gone." Moreover, Appellant does not challenge that the actual medical expenses presented to the jury exceeded $20,000 or that Appellee's average life expectancy exceeded eleven years. Finally, contrary to Appellant's arguments, there was no indication whatsoever that Appellee would not recover from her stroke and walk again. In fact, there was some indication through Appellee's cross-examination of Dr. Turner that she had made progress in her rehabilitation.

■ From the above-cited testimony, we cannot conclude that the damages awarded by the jury were unfairly prompted by the jurors' compassion for Appellee, who was confined to a wheelchair, nor can we conclude that the sum of $150,000 was so great as to shock the conscience or demonstrate passion or prejudice on the part of the trier of fact.

Affirmed.